**Dennis SUTTON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 52A02–9901–CR–59.

Court of Appeals of Indiana.

July 13, 1999.

Rehearing Denied Aug. 27, 1999.

Susan K. Carpenter, Public Defender of Indiana, Lorraine L. Rodts, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Sarah E. Scherrer, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Appellant–Defendant, Dennis Sutton, was convicted by a jury of battery resulting in serious bodily injury,[1] a Class C felony, and criminal recklessness,[2] a Class B misdemeanor. Sutton appeals his battery conviction, presenting the following issues for our review:

I. Whether the evidence is sufficient to establish "serious bodily injury" within the meaning of IC 35–42–2–1(a)(3).

II. Whether the trial court erred in ordering Sutton to pay a domestic violence fee.

We affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the jury's verdict establish that in the early morning hours of February 1, 1998, Sutton and his girlfriend, Susan Graham, returned home from an evening of drinking with friends. Graham's mother was babysitting the couple's three-month-old daughter. Upon entering the house, Sutton and Graham began arguing with each other in the bedroom, and when Graham's mother attempted to intervene, she was verbally accosted by Sutton and ordered to leave. The argument between Sutton and Graham then escalated, and Sutton struck Graham twice in the face with his open hand.

1. *See* IC 35–42–2–1(a)(3).

2. *See* IC 35–42–2–2(b)(1).

On one of those occasions, Graham was sitting on the bed holding their baby.

After leaving the couple's house, Graham's mother called 911 on her cellular phone. Officer Daniel Sofianos of the Peru Police Department arrived on the scene moments later to investigate the domestic disturbance and knocked on the front door. When Sutton opened the door, Graham ran out of the house "as fast as she could," crying and holding her baby. *Record* at 408. It took Officer Sofianos approximately thirty minutes to calm Graham down to determine what had happened, during which time Graham continued to cry hysterically and retreated to the bathroom twice to vomit. Thereafter, photographs were taken of Graham's facial injuries, which included a black left eye, bruising from that eye to her left ear, as well as extensive visible swelling at her left temple. Graham also signed a battery affidavit in Officer Sofianos' presence alleging Sutton had struck her. Sutton was consequently arrested, and family members who had arrived on the scene took Graham to the emergency room for treatment of her injuries. It was later determined that the fight between Sutton and Graham had been inadvertently recorded on Graham's sister's answering machine when Graham tried to call her during the course of the incident. This tape was handed over to police and played as evidence at trial.

Sutton was subsequently charged with battery resulting in serious bodily injury, a Class C felony, and criminal recklessness, a Class B misdemeanor. In two independent statements given to police immediately following the incident, Graham maintained that Sutton had twice struck the left side of her face. However, in her deposition and again at trial, Graham discounted the severity of her injuries and testified she received them as a result of being elbowed by Sutton as he was attempting to shrug her off.

Following a jury trial which commenced on October 5, 1998, Sutton was found guilty on both counts and sentenced accordingly. As part of his sentence, the trial court ordered Sutton to pay a fifty dollar domestic violence fee. Sutton now appeals.

## DISCUSSION AND DECISION

### I. Sufficiency of the Evidence

When reviewing a claim of sufficiency of the evidence, we neither reweigh the evidence nor judge the credibility of witnesses. *Isaacs v. State*, 673 N.E.2d 757, 764 (Ind.1996) (citing *Jordan v. State*, 656 N.E.2d 816, 817 (Ind.1995)). Rather, we look only to the evidence and the reasonable inferences therefrom that support the verdict. *Id.* The conviction will be affirmed if evidence of probative value exists from which a jury could find the defendant guilty beyond a reasonable doubt. *Id.*

The Indiana Code provides in part that a "person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery ... a Class C felony if it results in serious bodily injury to any other person...." IC 35–42–2–1(a)(3). Sutton contends that the evidence is insufficient to prove the element of resulting "serious bodily injury," thus challenging his conviction for battery as a Class C felony.

Serious bodily injury is defined as "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) *extreme pain;* (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." IC 35–41–1–25 (emphasis added). Here, Graham was struck twice in the face with an open hand. As a result, she suffered a large contusion to her left temple accompanied by a swollen knot which Officer Sofianos described as protruding one-half to one inch out the side of Graham's head, "like a quarter of a baseball." *Record* at 428. At the hospital, Graham's condition was serious enough that the attending physician ordered x-rays of her mandible and facial bones to determine whether she had sustained a fracture. While the x-rays were negative for fracture, they did reveal soft tissue swelling on the left side of the nose. Graham also suffered a black left eye which remained bruised for two to four weeks, and experienced vision problems in that eye immediately following the incident. Graham's mother testified that her daughter suffered a constant, migraine-like

headache for one to two weeks after the incident and that she observed Graham taking aspirin on several occasions, which was unusual because Graham did not like to take pills. Both her mother and sister confirmed that Graham had not experienced this level of headache before. In addition, Graham's face, teeth, and jaw hurt such that it was difficult for her to eat.

Although at trial Graham attempted to discount her injuries and deny they caused her extreme pain, such denials do not render the evidence insufficient. *See Dausch v. State,* 616 N.E.2d 13, 15 (Ind.1993) (other evidence sustained defendant's conviction for rape, criminal confinement, and battery of his girlfriend despite girlfriend's in-court testimony recanting her allegations against defendant). Based on the testimony of Officer Sofianos and Graham's mother, Graham's pre-trial statements to police, and the photographs and medical records depicting Graham's injuries, the jury was entitled to infer that Graham suffered extreme pain as a result of being struck twice in the face with an open fist, and as such, sustained serious bodily injury. Moreover, we have noted that whether bodily injury is "serious" is a question of degree and therefore more appropriately reserved for the finder of fact. *Minniefield v. State,* 569 N.E.2d 734, 736 (Ind.Ct. App.1991) (citing *Ricks v. State,* 446 N.E.2d 648, 650–51 (Ind.Ct.App.1983)). Because there is substantial evidence of probative value supporting Sutton's conviction, we will not reverse the jury's verdict.

## II. Domestic Violence Fee

Sutton contends that the trial court erred in ordering him to pay a fifty dollar domestic violence fee as part of his sentence. IC 33–19–6–13 provides in pertinent part:

"In each criminal action in which:

(1) a person is found to have committed the offense of:

. . . .

(E) battery (IC 35–42–2–1);

. . . . and

(2) the victim is a spouse or former spouse of the person who committed an offense under subdivision (1);

the court shall order the person to pay a domestic violence prevention and treatment fee of fifty dollars ($50) to the clerk."

Sutton argues that because Graham was neither his spouse nor former spouse at the time the battery was committed, the trial court acted outside statutorily prescribed limits when assessing a fee against him under the provisions of IC 33–19–6–13.

In response, the State concedes that strict application of IC 33–19–6–13 precludes assessment of the domestic violence fee against Sutton because Sutton and Graham were not legally married. The State contends, however, that because the couple lived together as husband and wife, anticipated marriage, and maintained a common household in which they raised their daughter, Graham's lifestyle satisfies the concept of a spouse within the scope of IC 33–19–6–13. As such, the State proposes that we extend the meaning of the term "spouse" to include all persons who, like Graham, live with a future spouse and whose future spouse batters them before marriage. We decline to do so.

■ In construing a statute, words and phrases must be given their plain, ordinary and usual meaning, unless a contrary purpose is clearly shown by the statute itself. *Jacobs v. State,* 640 N.E.2d 61, 64 (Ind.Ct. App.1994) (citing *Williams v. State,* 600 N.E.2d 962, 964 (Ind.Ct.App.1992)). If the language of a statute is clear and unambiguous it is not subject to judicial interpretation. *Town of Merrillville v. Merrillville Conservancy Dist.,* 649 N.E.2d 645, 649 (Ind.Ct. App.1995) (citing *Avco Financial Services v. Metro Holding,* 563 N.E.2d 1323, 1328 (Ind. Ct.App.1990)).

■ The meaning of the word "spouse" is unequivocal and not subject to our interpretation. Black's Law Dictionary defines spouse as "[o]ne's husband or wife." BLACK'S LAW DICTIONARY 1402 (6th Ed.1990). It also defines wife as a "woman united to a man by marriage; a woman who has a husband living and undivorced." *Id.* at 1598. While the Record demonstrates that Graham lived with Sutton and was the mother of their child, she was not legally married to Sutton and therefore was not his spouse within the meaning

of IC 33–19–6–13. This holding is consistent with our Legislature's clear expression of intent not to lend spousal rights and benefits to those not legally married. *See, e.g., Williams v. Williams,* 460 N.E.2d 1226, 1228 (Ind.Ct.App.1984) ("The Legislature's repeal of the statute validating [common-law] marriages and simultaneous enactment of a statute prohibiting common-law marriage is a clear expression of intent not to recognize marriages such as the Williams."); *Barajas v. State,* 627 N.E.2d 437, 439 (Ind.1994) (refusing to extend the privilege not to testify against one's spouse to those not legally husband and wife); IC 22–3–3–19(a) ("The term 'wife' as used in this subsection [of the Worker's Compensation Act] shall exclude a common law wife unless such common law relationship was entered into before January 1, 1958.").

Accordingly, the trial court erred in ordering Sutton to pay the fifty dollar domestic violence fee set forth in IC 33–19–6–13, where Graham was neither his spouse nor his former spouse. We therefore reverse the trial court's sentence only to the extent that it requires Sutton to pay such a fine.

Affirmed in part and reversed in part.

DARDEN, J., concurs.

BROOK, J., concurs with separate opinion.

BROOK, J., concurring.

While I agree with the majority's interpretation of IND.CODE 33–19–6–13 as that statute currently reads, I write to urge legislative action to correct what may well have been an inadvertent oversight on the part of our legislature. The legislature, in imposing the domestic violence prevention and treatment fee (as well as the similar child abuse prevention fee), has been forward-looking in its efforts to remedy the grave societal ill of domestic abuse. To reflect truly the reality of many Indiana households, however, there must be a recognition that the definition of "domestic" violence should encompass violence against and between adults who live together in a household, regardless of marital status. The instant case presents a particularly poignant example of the necessity for this broader definition.

This definitional change would not run counter to the majority's valid recognition of the legislative prerogative to limit the conferral of spousal rights and benefits to those who are legally married. The domestic violence prevention and treatment fee is not a right or benefit conferred on the victim, but rather a penalty exacted by and on behalf of the State, in recognition of the destructive social effects of domestic violence.