**Mark J. HAND, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 14A05–0605–CR–241.**

Court of Appeals of Indiana.

March 28, 2007.

Darren Bedwell, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General Indianapolis, IN, Attorneys for Appellee.

## OPINION

BAKER, Chief Judge.

Appellant-defendant Mark J. Hand appeals his convictions for Battery Resulting in Serious Bodily Injury,[1] a class C felony, and Domestic Battery,[2] a class A misdemeanor. Specifically, Hand argues that (1) the State presented insufficient evidence to support the class C felony battery conviction, (2) evidence of his prior bad acts was erroneously admitted at trial, and (3) the prosecutor committed misconduct that constituted fundamental error. Concluding that there was no prosecutorial misconduct but that there was insufficient evidence of the victim's serious bodily injury to convict Hand of class C felony battery, we remand this case to the trial court with instructions to vacate the class C felony battery conviction.[3]

---

1. Ind.Code § 35–42–2–1(a)(3).

2. I.C. § 35–42–2–1.3.

3. Normally, when vacating a class C felony battery conviction we would impose a class A misdemeanor battery conviction in its place. I.C. § 35–42–2–1. However, Hand was also convicted of class A misdemeanor domestic battery at trial, and the trial court erroneously failed to vacate that conviction. *Puckett v. State*, 843 N.E.2d 959, 964 (Ind.Ct.App.2006)

(holding that where a defendant is found guilty of both the greater offense and the lesser-included offense, the trial court's proper procedure is to vacate the conviction for the lesser-included offense and enter a judgment of conviction and sentence only upon the greater offense). Because the conviction we would normally impose-class A misdemeanor battery-is factually a lesser-included offense of Hand's class A misdemeanor domestic battery conviction, we instead vacate

## FACTS

On September 3, 2005, Hand and his wife Diona began to argue after accusing each other of engaging in extramarital affairs. The argument soon became physical and, as a result of Hand's actions, Diona suffered two black eyes and bruising to her mouth, shoulders, and hands. For "four or five days" after the argument, Diona placed hamburger meat, ice, and hot packs on her injuries to "take [the] swelling down" and lessen the bruises. Tr. p. 328.

Debra Fields–Diona's mother–heard about her daughter's injuries on September 5, 2005. Fields contacted the Daviess County Sheriff's Department and Deputy Michael Brinson was dispatched to the Hand residence. Deputy Brinson spoke with Diona at the front door of the residence and observed that she had "injuries to her face...." *Id.* at 110. Diona refused Deputy Brinson's offer of medical help and declined to press charges against Hand.

Upon leaving, Deputy Brinson was dispatched to a local gas station where Fields was waiting for him. After receiving more information from Fields, Deputy Brinson immediately returned to the Hand residence with Fields and Lieutenant Chuck Milton. Hand appeared at the door after Deputy Brinson had knocked for approximately five minutes. The two briefly spoke and Hand informed the officer that Diona had "had an accident ..." that caused her injuries. *Id.* at 121. Diona eventually appeared at the door and exited the residence to talk to her mother, aunt, and sister, who were standing outside. Diona eventually gave Lieutenant Milton a written statement and the officers photographed her injuries. Hand was subsequently arrested.

On September 7, 2005, the State charged Hand with class C felony battery and class A misdemeanor domestic battery. Hand remained incarcerated pending a trial. Between his arrest and January 22, 2006, Hand placed approximately one hundred telephone calls to his best friend, Brad Krodel, and Diona often went to Krodel's residence to speak to Hand when he would call. All telephone calls made by Daviess County Security Center inmates are recorded, and in some of the calls, Hand discussed his pending case with Krodel or Diona. Specifically, Hand stated that during the attack he had "slapped [Diona] in the f'ing mouth," "f'ing hit her in the face," and that she had a "f'ing black eye." *Id.* at 193, 203; State's Ex. 21. Hand also informed Diona, "they can't make you testify against me anyway." Tr. p. 192.

A three-day jury trial began on January 25, 2005, and the jury found Hand guilty as charged. The trial court held a sentencing hearing on February 23, 2006, and sentenced Hand to six years for the class C felony battery conviction, with two years suspended, and to one year for the class A misdemeanor domestic battery conviction. The trial court ordered that the sentences run concurrently, for an aggregate term of four years of imprisonment. Hand now appeals.

## DISCUSSION AND DECISION

### I. Sufficiency of Evidence

■ Hand argues that the State presented insufficient evidence to sustain his conviction for class C felony battery. Specifically, Hand argues that no evidence was presented that Diona was in extreme pain and, therefore, her injuries did not consti-

---

Hand's class C felony battery conviction and

do not impose another conviction.

tute "serious bodily injury" pursuant to the battery statute. I.C. 35–42–2–1(a)(3).[4]

We initially note that the standard of review for sufficiency claims is well settled. In addressing Hand's challenge, we neither reweigh the evidence nor reassess the credibility of witnesses. *Sanders v. State*, 704 N.E.2d 119, 123 (Ind.1999). Instead, we consider the evidence most favorable to the verdict and draw all reasonable inferences that support the ruling below. *Id.* We affirm the conviction if there is probative evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. *O'Connell v. State*, 742 N.E.2d 943, 949 (Ind.2001). While the State may prove its case by circumstantial evidence alone, *Gambill v. State*, 675 N.E.2d 668, 674 (Ind. 1996), a judgment will be sustained based on circumstantial evidence only if that evidence supports a reasonable inference of guilt, *Tate v. State*, 835 N.E.2d 499, 510 (Ind.Ct.App.2005), *trans. denied.*

For purposes of a class C felony battery conviction, "serious bodily injury" is "bodily injury that creates a substantial risk of death or that causes: (1) serious permanent disfigurement; (2) unconsciousness; (3) extreme pain; (4) permanent or protracted loss or impairment of the function of a bodily member or organ; or (5) loss of a fetus." Ind.Code § 35–41–1–25. Whether bodily injury is "serious" is a question of degree and, therefore, appropriately reserved for the finder of fact.

*Sutton v. State*, 714 N.E.2d 694, 697 (Ind. Ct.App.1999). As our Supreme Court held in *Davis v. State*, "[a]s with all matters of degree, it is difficult to describe in words a bright line between what is 'bodily injury' and what is 'serious bodily injury.'" 813 N.E.2d 1176, 1178 (Ind.2004). The State argues that it presented sufficient evidence that Diona was in extreme pain; therefore, her injuries constituted "serious bodily injury" under Indiana Code section 35–41–1–25 and Hand's class C felony battery conviction was proper.

Regrettably, we are presented with an all-too-common situation. While Hand admittedly [5] injured Diona and Diona initially gave a written statement to police after the incident, upon taking the stand at Hand's trial, Diona denied that Hand had seriously injured her. The State entered into evidence the photographs of Diona's injuries that the police took on September 5, 2005. The photographs show that Diona had two black eyes and bruising on her face, shoulders, and hands. State's Ex. 1–9. Nonetheless, when Diona took the stand she immediately testified that she was "happily married" and "wasn't a victim of nothing . . . ." Tr. p. 273.

While Diona did admit that Hand "touched" her during the altercation, she stated that he was merely trying to defend himself after she "started throwing anything and everything [she] could get [her] hands on at him" and "beating the sh*t out of him." *Id.* at 309, 311, 315. Diona testi-

---

**4.** Indiana Code section 35–42–2–1(a)(3) provides "[a] person who knowingly or intentionally touches another person in a rude, insolent, or angry manner commits battery, a Class B misdemeanor. However, the offense is . . . a Class C felony if it results in serious bodily injury to any other person . . . ."

**5.** Hand's main argument at trial was not that he should be acquitted of both charges but, instead, that Diona's injuries did not consti-

tute serious bodily injury sufficient to convict him of class C felony battery. As his defense counsel stated during closing, "Mr. Hand touched Mrs. Hand intentionally in a rude, insolent, or angry manner as she was his wife, and because of that touching she suffered bodily injury." Tr. p. 376. That statement covers each of the elements necessary for a class A misdemeanor domestic battery conviction. I.C. § 35–42–2–1.3.

fied that she never thought that she needed to seek medical attention for her bruises and that she didn't have any broken bones. *Id.* at 321. When it was suggested that Diona "wrenched away in pain" from her mother when her mother tried to hug her the day the police came, Diona responded, "No. I wrenched away because I told them all to get the hell out of my yard...." *Id.* at 322. Diona testified that for "four or five days" after the argument she placed hamburger meat, ice, and hot packs on her injuries to "take [the] swelling down" and lessen the bruises. *Id.* at 328. Aside from these home remedies, Diona stated that she had "not sought medical treatment and [had] not taken any kind of medication, prescribed or otherwise, for pain." *Id.* at 323, 326.

The State argues that it presented adequate circumstantial evidence of Diona's extreme pain to sustain Hand's class C felony battery conviction. To support its argument, the State directs us to the testimony of the Hands' neighbor, Ruth Ann Lawyer. Lawyer testified that she went to the Hands' residence the day after Diona sustained her injuries and that Diona answered the door and "was beat up." *Id.* at 128. Lawyer testified that Diona "was a mess[,]" that one of her eyes was "closed and big[,]" and that she looked worse that day than when the police photographed her the next day. *Id.* at 130–32. The State contends that Diona clearly downplayed her injuries at trial to protect her husband and that Lawyer's testimony, the police photographs, and Diona's admission that she used home remedies for "four or five days" was sufficient evidence of Diona's extreme pain. *Id.* at 328. The State argues that "it was the jury's prerogative to weigh the credibility of witnesses and ... the jury was free to disregard [Diona's] testimony." Appellee's Br. p. 9 (citing *Stephenson v. State*, 742 N.E.2d 463, 499 (Ind.2001)).

■ We have no doubt that the injuries Hand inflicted on Diona caused her some pain and discomfort. However, it was the State's burden to produce evidence of Diona's serious bodily injury-here, that the injuries caused Diona extreme pain—to obtain a class C felony battery conviction. In *Davis*, our Supreme Court elaborated on the definition of "serious bodily injury" for purposes of a defendant's class D felony criminal recklessness conviction:

The appellate courts have sometimes been willing to sanction convictions resting on rather slim levels of injury. *See, e.g., Williams v. State*, 520 N.E.2d 1261 (Ind.1988) (injury held "serious" when victim was struck in face and back of head, causing lacerations requiring several sutures to close); *Sutton v.* State, 714 N.E.2d 694 (Ind.Ct.App.1999) (evidence of black eye, soft tissue swelling, and migraine-like headaches causing victim to use aspirin on several occasions over two weeks held sufficient to establish "extreme pain").

Still, most of the cases cited by the present parties *rightly focus* on injuries that plainly reflect the sort of serious infliction of damage suggested by the statutory definition of "serious bodily injury." *See, e.g., Hollins v. State*, 790 N.E.2d 100 (Ind.Ct.App.2003) (victim's arm, injured by gunshot, was "useless" and likely to be amputated); *Judy v. State*, 470 N.E.2d 380 (Ind.Ct.App.1984) (beat with pool cue, victim's leg broken in four places, hospitalized for four days, in a cast for three months, still limped at time of trial).

To be sure, injuries less substantial than those in cases like *Hollins* and *Judy* can qualify as "serious bodily injury." But measured against that standard and against the statutory definition, [Davis's victims' injuries, which included] a

slightly lacerated lip and a broken pinky do not make the grade.

813 N.E.2d at 1178 (emphasis added).

Even in light of the *Davis* victim's broken finger, the Supreme Court focused on the lack of testimony regarding the victim's pain, the fact that pain medication was not prescribed when the victim left the hospital, and the fact that the police officer described the victim as "walking normally when he first saw her." *Id.* at 1178–79. In light of these circumstances, the Supreme Court entered a lesser conviction for Davis, holding that insufficient evidence was presented regarding the victim's alleged serious bodily injury.

While we agree with the State that a conviction can be sustained on circumstantial evidence and are aware that factual findings are typically reserved for the trier of fact, we are compelled by *Davis* to hold that insufficient evidence was presented at trial to sustain Hand's class C felony battery conviction. We emphasize that our ruling today is not meant to downplay the serious nature of spousal abuse and the potential deadly injuries that can result from a domestic quarrel. However, no evidence was presented regarding pain that Diona may have felt as a result of her

injuries,[6] she did not have any broken bones, she did not seek medical attention, and there was no evidence that she took any pain medication for her injuries. While the photographs of Diona's injuries were entered into evidence, in light of *Davis*, we are compelled to hold that such evidence alone was insufficient to prove that Diona suffered serious bodily injury pursuant to Indiana Code section 35–41–1–25. Therefore, we remand this case to the trial court with instructions to vacate Hand's class C felony battery conviction.[7]

## II. Prosecutorial Misconduct

Hand argues that that there were four instances of prosecutorial misconduct sufficient to constitute fundamental error. Specifically, Hand argues that the prosecutor (1) improperly referred to Diona as a victim of Battered Women's Syndrome (BWS), (2) improperly vouched for Deputy Brinson's credibility, (3) improperly asked the jury to convict Hand for reasons other than evidence of his guilt, and (4) improperly commented regarding Hand's failure to testify at trial.

When reviewing a claim of prosecutorial misconduct, we must first consider whether the prosecutor engaged in misconduct. *Williams v. State,* 724 N.E.2d 1070,

---

**6.** In its brief, the State cites Lawyer's testimony recounting her visit to Hand's residence, specifically when Lawyer testified that Diona told her "her shoulders hurt." Appellee's Br. p. 9 (citing Tr. p. 135). However, Hand immediately objected to Lawyer's comment and the court sustained the objection, ruling that Lawyer's comment was hearsay.

We acknowledge that a victim's statements may constitute admissible hearsay pursuant to the Indiana Rules of Evidence. Evid. R. 803, 804. Here, however, the State did not represent to the trial court that Diona's statements to Lawyer or Deputy Brinson were admissible hearsay. While we stress that it may be possible for a trial court to find that a victim's injuries constituted serious bodily injury based on testimony from a witness other

than the victim, no testimony regarding Diona's alleged extreme pain was admitted at Hand's trial.

**7.** While we have vacated Hand's class C felony battery conviction, his conviction for class A misdemeanor domestic battery remains. While we will not entertain Hand's argument that his prior bad acts were erroneously admitted because Hand, through counsel, admitted to the elements of class A misdemeanor domestic battery, tr. p. 376—therefore, any alleged erroneous admission would be harmless error—we will entertain Hand's prosecutorial misconduct argument because he claims that the prosecutor's conduct resulted in fundamental error and violated his constitutional right to a fair trial.

1080 (Ind.2000). We must then consider whether the alleged misconduct placed Hand in a position of grave peril to which he should not have been subjected. *Id.* In judging the propriety of the prosecutor's remarks, we consider the statement in the context of the argument as whole. *Hollowell v. State,* 707 N.E.2d 1014, 1024 (Ind. Ct.App.1999). It is proper for a prosecutor to argue both law and fact during final argument and propound conclusions based upon his analysis of the evidence. *Id.* A prosecutor is entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable. *Lopez v. State,* 527 N.E.2d 1119, 1125 (Ind.1988).

When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. *Dumas v. State,* 803 N.E.2d 1113, 1117 (Ind.2004). If the party is not satisfied with the admonishment, then he or she should move for mistrial. *Id.* Failure to request an admonishment or to move for mistrial results in waiver. *Id.* Where a claim of prosecutorial misconduct has not been properly preserved, our standard of review is different from that of a properly preserved claim. More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Booher v. State,* 773 N.E.2d 814, 817 (Ind.2002). Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process ... present[ing] an undeniable and substantial potential for harm." *Benson v. State,* 762 N.E.2d 748, 756 (Ind.2002).

We initially note that Hand neither requested an admonishment nor moved for mistrial when the prosecutor made *any* of the comments that Hall argues constituted prosecutorial misconduct. Therefore, Hall has waived these arguments and must show that any misconduct resulted in fundamental error to succeed on appeal.

#### A. BWS

During closing argument, the prosecutor referred to Diona as a "classic abused spouse" and a "classic abused woman." Tr. p. 340, 352. The prosecutor also referred to Diona as a victim of "battered woman syndrome ..." and mentioned a cycle or pattern of violence and control that likely existed between Hand and his wife. *Id.* at 345. The State admits that "[t]he prosecutor's specific reference to the term 'battered wife syndrome' was improper due to the lack of evidence that Diona had suffered from such a syndrome." Appellee's Br. p. 14. However, the State argues that the isolated reference to that term did not constitute fundamental error because there was overwhelming evidence of Hand's guilt.

We agree that the State presented overwhelming evidence that Hand was guilty of class A misdemeanor domestic battery—specifically, the photographs of Diona's injuries, Diona's testimony that Hand "touched" her during the altercation, her testimony that she had used home remedies to lessen the injuries for "four or five days," and the recordings of Hand telling his best friend that he had "slapped [Diona] in the f'ing mouth," "f'ing hit her in the face," and that she had a "f'ing black eye." Tr. p. 315, 328, 376; State's Ex. 21. Moreover, Hand, through counsel, admitted to committing the crime. Tr. p. 376. Our Supreme Court has previously held that in light of overwhelming independent evidence of a defendant's guilt, error made by a prosecutor during the closing argument is harmless. *Coleman v. State,* 750

N.E.2d 370, 375 (Ind.2001). Because the State presented overwhelming independent evidence that Hand was guilty of class A misdemeanor domestic battery—an act that he does not deny—we find that any reference by the prosecutor to BWS or a cycle of violence that may have existed between Hand and Diona did not amount to fundamental error.

### B. Deputy Brinson's Credibility

■■■ Hand argues that the prosecutor improperly vouched for Deputy Brinson's credibility. In his rebuttal closing argument, the prosecutor stated:

> Well, let me tell you one thing, the charges in this case are the Officer at the scene, Jim Brinson, an Officer five or six years, having investigated a multitude of domestic violence, and other violence, and other violence cases ... [h]e signed an affidavit under oath to that effect. He has seen many, many, many cases, he's not playing, he's saying, here's what I see, here's what I believe happened.... I'm here to tell you that the Officer saw this and he charged what he charged and he said it under oath, under his solemn oath, and that's important....

Tr. p. 396–97. Hand argues that it was improper for the prosecutor to vouch for Deputy Brinson's credibility because such an opinion violated Indiana Professional Conduct Rule 3.4(e).[8]

However, Hand does not cite his defense attorney's comments during closing argument that led to the prosecutor's response that Hand now argues was inappropriate:

Deputy Brinson responds to that [police] call, goes to the house, sees Diona Hand.... [H]e saw the extent of her injuries, he talked with her, he saw her injuries, he told you that. He, also, told you that he was told he knew Mark Hand was still in the house. He's talking with her, he's the first officer to see her. He talks with her, he sees her injuries, he knows Mark Hand is still in the house, what does he do, folks? Did he call for an ambulance? He's got backup, got another officer standing right there with him, he told you that. Does he call Mr. Hand out to talk to him? [No.] He leaves....

Tr. p. 387.

The defense counsel's comments questioning Deputy Brinson's decision to not immediately arrest Hand invited the prosecutor's response. A prosecutor is entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable. *Lopez,* 527 N.E.2d at 1125. Therefore, this comment does not amount to fundamental error.

### C. Comments Regarding Reasons Other Than Guilt

■■■ Hand argues that the prosecutor improperly told the jury that they were the "moral conscience of the community and must take into account all of the facts and circumstances in this case." Tr. p. 363. Hand also directs us to comments the prosecutor made that urged the jury to convict Hand for Diona, the couple's children, and the community as a whole. *Id.* at 404–05.

---

8. Indiana Professional Conduct Rule 3.4(e) provides:
  A lawyer shall not:
  e) in trial, allude to any matter that the lawyer does not reasonably believe is relevant or that will not be supported by admissible evidence, assert personal knowledge of facts in issue except when testifying as a witness, or state a personal opinion as to the justness of a cause, *the credibility of a witness,* the culpability of a civil litigant or the guilt or innocence of an accused;
  (Emphasis added).

We initially note that the jury was instructed-without objection from Hand-that they were the moral conscience of society. Appellant's App. p. 187. The "Moral Conscience of Society" instruction was approved by our Supreme Court in *Wilson v. State*, 697 N.E.2d 466, 477–78 (Ind.1998). Because the prosecutor simply admonished the jury regarding a general principal that has been approved by our Supreme Court, we do not find the comments to constitute misconduct.

██ Turning to the prosecutor's comments that the jury should convict Hand for Diona, her family, and the community as a whole, the gravamen of those comments was that the evidence presented at trial supported the State's charges and, therefore, Hand should be held accountable for his actions and convicted. While the prosecutor's comments suggesting that a conviction in this case may motivate other victims of domestic abuse to identify their abusers may have been improper—inasmuch as the comments gave the jury a reason other than Hand's guilt to convict him—those comments did not amount to fundamental error in light of the overwhelming independent evidence of Hand's guilt.

### D. Hand's Failure to Testify

Hand argues that the prosecutor improperly commented on his failure to testify, which violated his right to remain silent.[9] Specifically, Hand directs us to two comments the prosecutor made during closing arguments that Hand argues violated his fundamental rights.

██ A criminal defendant has a fundamental constitutional right to exercise his Fifth Amendment privilege against compulsory self-incrimination without adverse inference or comment at trial. *Reynolds v. State*, 797 N.E.2d 864, 869 (Ind.Ct.App.2003). The Fifth Amendment privilege against compulsory self-incrimination is violated when a prosecutor makes a statement that is subject to reasonable interpretation by a jury as an invitation to draw an adverse inference from a defendant's silence. *Boatright v. State*, 759 N.E.2d 1038, 1043 (Ind.2001). The Fifth Amendment protects a defendant from having the prosecution make direct or indirect comments regarding their silence. *United States v. McClellan*, 165 F.3d 535, 548 (7th Cir.1999). We will not reverse if the prosecutor's comment, in its totality, focuses on evidence other than the defendant's failure to testify. *Id.* "Prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." *Dumas*, 803 N.E.2d at 1118.

It is important to note that Hand's defense counsel—in his opening statement—promised the jury that Hand was going to testify at trial:

> I'm not going to try to lie to you, I'm not trying to subvert the whole criminal justice system of Daviess County, or lie to you. You are going to hear from Mr. Hand's own mouth what happened because he's going to testify. He's going to tell you that the State is right, that he on September the 2nd, early morning of September the 3rd, he and his wife were discussing a lot of problems in their marriage, that that discussion got out of hand. He's going to tell you that that discussion escalated into a [mutual]

**9.** In relevant part, the Fifth Amendment to the United States Constitution provides "[n]o person ... shall be compelled in any criminal case to be a witness against himself." Article I, section 14 of the Indiana Constitution provides "[n]o person, in any criminal prosecution, shall be compelled to testify against himself."

fight.... [H]e's going to sit in that chair, he's going to be sworn in, and that's what he's going to tell you.

*Id.* at 102. In closing, Hand's defense counsel explained his failure to testify:

> I told you [in my opening statement that Hand] was going to take the stand and tell you what he did. At the last minute [he did not testify], and I want to tell you why I did this ... you have heard it over and over and over and over again what he did. If I put him on the stand and let him tell you, again, would it make the facts any different? ... Mr. Hand touched Mrs. Hand intentionally in a rude, insolent, or angry manner as she was his wife, and because of that touching she suffered bodily injury. That's what he did. You heard it, you heard it from his mouth on the tapes over and over and over again.

*Id.* at 376.

### 1. *Prosecution's Indirect Comment*

■ The prosecution made the first comment that Hand directs us to while providing a summary of the evidence that had been presented at trial during closing argument: "There's, absolutely, no evidence to controvert from the defense, or anywhere else, what the evidence is." *Id.* at 365. Before making that comment, the prosecutor had summarized the evidence presented at trial and asked the jury to "give the greatest value to the evidence you find most convincing." *Id.*

This comment by the prosecution is, at best, an indirect comment on Hand's failure to testify. The United States Supreme Court held that when the defendant's own counsel focuses the jury's attention on the defendant's silence by first promising the jury during opening arguments that the defendant will testify, a prosecutor's indirect comments during closing arguments regarding the State's "unrefuted" and "uncontradicted" evidence did not violate the defendant's Fifth Amendment rights. *Lockett v. Ohio,* 438 U.S. 586, 594–95, 98 S.Ct. 2954, 57 L.Ed.2d 973 (U.S.1978). As in *Lockett,* Hand's counsel clearly promised the jury that Hand was going to testify. Therefore, the prosecutor's comment— which is, at best, an indirect comment on Hand's failure to testify—was not a violation of Hand's rights.

### 2. *Prosecution's Direct Comment*

■ The second comment to which Hand directs us is a direct reference to Hand's failure to testify. In closing, the prosecutor stated:

> The point is, [Hand] didn't take the stand because he didn't have to testify under oath. He hasn't testified under oath. His attorney says, ["]well, you've heard everything.["] The fact is, he hasn't sworn to tell the truth, he has given self serving statements which, in and of themselves, implicate him in [the crimes alleged].... The fact of the matter is he has not admitted anything here in Court, he hasn't testified, he hasn't taken an oath, he hasn't been cross examined. Reference to the contrary is simply wrong.

Tr. p. 399–400.

We again note that Hand's counsel promised the jury that Hand would testify at the trial. During Hand's closing, his defense counsel stated, "You heard it, you heard it from his mouth on the tapes over and over and over again." *Id.* at 376. While Hand's counsel admitted that Hand did not actually take the stand, he justified that decision by telling the jury that they had heard Hand "over and over again" on the recordings played at trial. *Id.*

■ "Testimony" is "[e]vidence that a competent witness under oath or affirmation gives at trial or in an affidavit or

deposition." Black's Law Dictionary 1514 (8th ed.2004). By making the comment above, the prosecutor was directly responding to the defense's assertion that the jury had "heard it all" because they had heard Hand speak on the recordings. The gravamen of the prosecutor's comment was that the jury did not hear Hand *testify* and that his voice on the recordings was not actual testimony. As the prosecutor stated, "[H]e hasn't testified, he hasn't taken an oath, he hasn't been cross examined. Reference to the contrary is simply wrong." Tr. p. 400. Hand's voice, as heard by the jury on the recordings, was clearly not "testimony," and the prosecutor's comments were in direct response to the defense counsel's implication to the contrary. As noted above, prosecutors are entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable. *Dumas,* 803 N.E.2d at 1118. Therefore, we do not find the prosecutor's comments to constitute fundamental error, especially in light of the fact that Hand's counsel first drew the jury's attention to Hand's intention to testify at trial.

The judgment of the trial court is affirmed in part, reversed in part, and remanded to the trial court with instructions to vacate the class C felony battery conviction.

DARDEN, J., and ROBB, J., concur.