**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**HILARY BOWE RICKS**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ELLEN H. MEILAENDER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| TIANDRE HARRIS, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A04-1401-CR-45 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Marc T. Rothenberg, Judge
Cause No. 49G02-1209-MR-62801

**August 25, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Tiandre Harris ("Harris") was convicted of Murder, a Felony.[1] He appeals the conviction. We affirm.

**Issues**

Harris raises two issues for our review:

    I.    Whether the State engaged in prosecutorial misconduct during the trial that placed Harris in grave peril; and

    II.    Whether the trial court abused its discretion when it denied Harris's motion for separate trials, which Harris submitted to the trial court at the close of the State's evidence.

**Facts and Procedural History**

Sometime in August 2012, Harris, together with Daryl Gilbert ("Gilbert") and a third individual, purchased drugs from Darrell Newbern ("Newbern") and Aaron Adams ("Adams"). Newbern and Adams lived in separate residences at the corner of Michigan Street and Sherman Avenue in Indianapolis.

About one week later, on August 26, 2012, individuals later identified as Harris and Gilbert hired a bootleg taxi that took them to a Valero gas station across the street from Newbern's and Adams's residences. Newbern had moved from the home two days before, and his housemates, Jonathan Weathers ("Weathers") and Shanna Pigg ("Pigg") were in the process of moving their own belongings from the home when Harris and Gilbert arrived. A number of other individuals were gathered on the porch of the home, including several children. Adams was also seated on the porch.

---

[1] Ind. Code § 35-42-1-1.

Gilbert, standing on the side of the street adjacent to the gas station with a pistol in his right hand, started yelling at the group, demanding to see Newbern and insisting that Newbern had sold him some "bullsh-t dope." (Tr. at 144.) Weathers told Gilbert that Newbern had moved away and no longer lived at the residence. He also told Gilbert not to shoot at the porch of the home because there were children present.

Adams, still sitting on the porch, told one of the women to take the children inside. He then got up and began to walk toward the street with a cell phone in his left hand and his right hand in his pocket. Gilbert recognized Adams as having been involved in the drug transaction, saying "you look like the n---a that sold me that bad dope," raised his pistol, and began to fire at Adams. (Tr. at 191-92.) At that time, Harris, who was also present, began to fire his own gun at Adams. Adams ran to evade Harris and Gilbert, but was eventually shot twice: once in the head, and once in the buttocks. Adams, who was known to carry a small pistol in his front right pocket, was found with a pistol near his right hand and a cell phone near his left hand. Adams died as a result of the gunshot wound to his head.

Immediately after this, Harris and Gilbert fled on foot, then called for a ride. Police investigating the shooting interviewed several witnesses and, as a result of identifications from photographic arrays, arrested Harris and Gilbert.

On September 10, 2012 Harris and Gilbert were each charged with Murder.

A jury trial was conducted from August 19 to 21, 2013, at the conclusion of which the jury was deadlocked.

3

A retrial, again in front of a jury, began on December 9, 2013 and continued through December 11, 2013. Harris and Gilbert each pursued a theory of self-defense at trial. At the close of the State's evidence, Harris filed a motion for separate trials as a result of testimony Harris expected Gilbert to offer. The trial court denied this motion. During its rebuttal argument at the close of the trial, the State argued that for Harris and Gilbert to have acted in self-defense, "'you have to believe that they saw the weapon'" that Adams was carrying at the time of the shooting. (Tr. at 379.) Harris objected to this statement, but the trial court overruled the objection.

At the trial's conclusion, the jury found Harris and Gilbert each guilty of Murder. On January 3, 2014, the trial court entered a judgment of conviction against Harris and sentenced him to fifty-eight years imprisonment.

This appeal ensued.

## Discussion and Decision

### The State's Rebuttal Argument

Harris argued during closing arguments that, whether it was he or Gilbert that shot and killed Adams, that individual had done so in self-defense. On appeal, Harris does not contend that the State failed in its burden to prove that Harris did not act in self-defense; rather, Harris contends that during closing arguments the State misstated the law on self-defense in order "to intentionally mislead the jury," the trial court did not properly admonish the jury upon Harris's objection and, as a result, we must reverse his conviction. (Appellant's Br. at 9.)

4

The gravamen of Harris's complaint—though he does not say so in as many words—is a contention that he was prejudiced by prosecutorial misconduct. In reviewing a properly preserved claim of misconduct, we determine first whether the prosecutor engaged in misconduct. Cooper v. State, 854 N.E.2d 831, 835 (Ind. 2006). If there has been misconduct, we must determine whether, "under all of the circumstances," the misconduct "placed the defendant in a position of grave peril to which he or she would not have been subjected." Id. Whether a prosecutor's argument constitutes misconduct is determined with reference to case law and the Rules of Professional Conduct. Id. The gravity of peril is measured by the probable persuasive effect of the misconduct on the jury's decision, not the degree of the impropriety of the conduct itself. Id.

It is proper for a prosecutor to argue both law and fact during closing arguments and to offer conclusions based upon analysis of the evidence presented at trial. Poling v. State, 938 N.E.2d 1212, 1217 (Ind. Ct. App. 2010). "A prosecutor is entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable." Hand v. State, 863 N.E.2d 386, 394 (Ind. Ct. App. 2007).

To properly preserve for appellate review a claim of prosecutorial misconduct, the defendant must request the trial court to admonish the jury. Id. If the defendant is not satisfied with the admonishment, he must then move for a mistrial; failure to seek an admonishment or to move for a mistrial waives appellate review. Id.

Harris pursued a theory of self-defense at trial. Our statutes define this affirmative defense:

A person is justified in using reasonable force against any other person to protect the person or a third person from what the person reasonably believes to be the imminent use of unlawful force. However, a person:

(1) is justified in using deadly force; and

(2) does not have a duty to retreat;

if the person reasonably believes that that force is necessary to prevent serious bodily injury to the person or a third person or the commission of a forcible felony. No person in this state shall be placed in legal jeopardy of any kind whatsoever for protecting the person or a third person by reasonable means necessary.

I.C. § 35-41-3-2(c).

Self-defense is a legal justification for what otherwise would be a criminal act. Tharpe v. State, 955 N.E.2d 836, 844 (Ind. Ct. App. 2011), trans. denied. To prevail on a claim of self-defense, the defendant must present evidence that he: (1) was in a place he had a right to be, (2) did not provoke, instigate, or participate willingly in the violence, and (3) had a reasonable fear of death or great bodily harm. Id. When a defendant asserts self-defense at trial, the State must disprove or rebut at least one element of self-defense beyond a reasonable doubt. Id. The State may do so either by presenting additional evidence or by relying upon the evidence presented in its case-in-chief. Id.

At Harris's trial, during its closing rebuttal, the State argued:

Now, one thing I want you to ask yourself when you go back there to deliberate, in order to believe that they acted in self-defense, reasonably believe they acted in self-defense, you have to believe that they saw the weapon.

(Tr. at 379.) Harris contends this statement amounted to prosecutorial misconduct.

The full statement by the prosecutor, in context, was:

6

If you are on your porch and there is somebody with a weapon across the street, what is the first thing you are going to do, get the kids inside. It doesn't mean [Adams] is trying to go over there and be aggressive. It means he doesn't want these kids to get shot because these people across the street have weapons. Now, one thing I want you to ask yourself when you go back there to deliberate, in order to believe that they acted in self-defense, reasonably believe they acted in self-defense, you have to believe that they saw the weapon [Adams possessed]. [Gilbert] testified, [Gilbert] testified that the gun was out. That [Adams] pulled the gun when he got to the middle of the street.

[HARRIS]: Judge, Judge I'm going to object, that's not a correct statement of the law at all that they would have had to see a gun as far as my client is concerned.

[COURT]: Okay. Your objection is over ruled [sic]. Continue [, State].

[STATE]: Had they seen that gun, okay, if what [Gilbert] says is true, that [Adams] pulled out that gun and that's why felt the need to defend himself, and that's why anybody needed to defend themselves because [Adams] had his gun out, when he was being fired at, why didn't [Adams] fire back?

(Tr. at 379-80.)

In context, the statement that Harris contends was made to improperly instruct the jury as to the law does not serve Harris's claimed purpose. Rather, the prosecutor's statement comes within the context of argument concerning the implications of the evidence before the jury concerning Gilbert's account of the events on August 26, 2012 that led to Adams's death.

Moreover, even if the State's argument was impermissible, Harris has failed to establish that the single statement to which he objected placed him in the grave peril necessary for us to reverse the verdict. During the trial, numerous witnesses testified that Adams was known to carry a small firearm in his front right jeans pocket, and at least one witness was aware that Adams had it on his person that day. Several witnesses testified that

7

Adams was reaching into his right pocket as he crossed the street from the house toward the location where Gilbert was standing. Several of the same witnesses also testified that Gilbert was already holding his pistol at his side and not, as Gilbert testified, in a holster. Several witnesses testified that Gilbert was shouting at the individuals on the porch, looking for Newbern, who had allegedly sold "bad dope" to him and Harris, and that when Adams stepped off the porch Gilbert appeared to recognize Adams from the same drug transaction. Weathers testified, without objection from Harris or Gilbert, that Gilbert's demeanor indicated that Gilbert was "ready to do what he did"—that is, to shoot Adams. (Tr. at 146.)

With respect to Harris's conduct, several witnesses testified that Harris was not standing with Gilbert, but rather had come around the side of a building and also had his gun out. Gilbert testified that he fired two shots in the air and began to run away. Testimony from witnesses on the porch indicated that Adams, too, ran to evade gunfire. Detective Sergeant Breedlove of the Indianapolis Metropolitan Police Department testified that Adams's body fell approximately fifty feet from the point at which Adams was said to have been standing when the shooting began. The moment at which Adams fell was captured on a video recording that was characterized at trial as showing the moment at which Adams was shot.

Thus, without reference to whether Adams's gun was visible to either Gilbert or Harris, there was ample testimony that Harris shot at Adams after he was already running away. We therefore cannot conclude that the State's argument concerning whether Adams's

gun was visible as he walked toward Gilbert, if that argument was improper, placed Harris in grave peril.

## Motion to Sever

We turn now to Harris's second contention on appeal, that the trial court abused its discretion when it did not sever the trial upon Harris's motion after the close of the State's case-in-chief.[2]

Indiana Code section 35-34-1-9, in relevant part, permits joinder of two or more defendants in a single charging information when each defendant is charged with each offense included in the information, I.C. § 35-34-1-9(b)(1), or when "not all of the defendants are charged in each count" but the information alleges that the offenses charged were either "part of a common scheme or plan" or "were so closely connected in respect to time, place, and occasion that it would be difficult to separate proof of one (1) charge from proof of the others." I.C. §§ 35-34-1-9(b)(3)(A) & (B). Section 35-34-1-11 provides that when two or more defendants have been joined in a single prosecution, one of the defendants may move for a separate trial. I.C. § 35-34-1-11(b). The motion must be granted "whenever the court determines that a separate trial is necessary to protect a defendant's right to a speedy trial or is appropriate to promote a fair determination of the guilt or innocence of a defendant." Id.

---

[2] Before the first trial, Harris pursued a motion for separate trial on the basis of out-of-court statements made by Gilbert. He does not now challenge the trial court's denial of that motion, and we therefore do not address that question here.

Ordinarily, a defendant's motion for severance must be made before the commencement of the trial. I.C. § 35-34-1-12(a). However, the motion to sever "may be made before or at the close of all evidence during trial based upon a ground not previously known." Id. Where a pretrial motion for severance is denied, the motion may be renewed on the same grounds at or before the close of all evidence at trial, and failure to renew the motion waives the right to severance. I.C. § 35-34-1-12(b).

Whether to grant a motion for separate trials is within the discretion of the trial court. Lampkins v. State, 682 N.E.2d 1268, 1272 (Ind. 1997). The court must grant such a motion "where the parties' defenses are mutually antagonistic and acceptance of one party's defense precludes the acquittal of the other." Id. On appellate review, "'consideration is given to events which actually occurred at trial and not allegations in the motion for severance.'" Id. (quoting Hopper v. State, 539 N.E.2d 944, 947 (Ind. 1989)). A defendant is not entitled to a separate trial simply because a co-defendant's testimony implicates the defendant. Id.

On appeal, Harris contends that he moved for severance during trial—and not before trial—"based upon a ground not previously known," specifically, whether Gilbert would testify and what that testimony would be, and that Gilbert's defense would be antagonistic to Harris's. See I.C. § 35-34-1-12(a). Contrary to the State's assertion in its brief, these contentions correspond to Harris's contentions at trial, where Harris's counsel argued that the defenses were antagonistic and that "it's not really a motion I can make until I know for sure that he [Gilbert] is gonna take the stand." (Tr. at 276.) Thus, the issues were not waived for appeal on the basis of inconsistent argument at trial.

10

However, we cannot agree with the substance of Harris's contentions; we thus agree with the State that Harris's motion to sever was untimely in light of Subsection 35-34-1-12(a)'s provision concerning "a ground not previously known." Harris argued before the trial court, "I'm going to move to sever … because … co-defendants have made a strategy decision that I don't agree with" that was "contradictory to the defense" because it would not be truthful—"if his testimony is similar to the testimony … *he [Gilbert] gave last time*." (Tr. at 274, emphasis added.) Harris's reference to "last time" was to the first trial of this case, which resulted in a hung jury, and during which Gilbert testified that he lacked any knowledge of a drug transaction.

Yet Gilbert offered the same testimony at the first trial and at the second trial, the proceedings of which are now subject to appellate review. Harris attempts to distinguish his position in the instant case from other cases interpreting the applicable language of Subsection 35-34-1-12(a), noting that one case pertained to an appellant's responsibility to know the provisions of the rape-shield statute, and the other related to whether a defendant could know in advance of a co-defendant's intent to testify about out-of-court statements. See Stovall v. State, 477 N.E.2d 252, 254-55 (Ind. 1985) (pertaining to the rape-shield statute); Terry v. State, 457 N.E.2d 546, 548-49 (Ind. 1984) (pertaining to a co-defendant's out-of-court statements, but finding no prejudice in the denial of a mid-trial motion to sever).

Unlike these two cases, here, Harris was aware in advance of the second trial (the results of which he presently appeals) not only of the substance of any out-of-court statements, but also of the substance of Gilbert's testimony at the first trial. Harris could,

11

prior to the second trial, have moved for severance, but did not do so. We cannot conclude that he lacked previously-known grounds for severance before the second trial.

Nor can we conclude Harris was in any manner prejudiced by the denial of his motion to sever the trials. For while Harris contends that his defense was antagonistic to that of Gilbert's, as the State observed both at trial and on appeal, the core of the defenses of each defendant was, at bottom, self-defense. The self-defense statute privileges not only self-defense, but also defense of others, and Gilbert's testimony was that he was privileged to use reasonable force as a result of Adams's movement toward him while Adams pulled a gun from his jeans. Harris also advanced a self-defense argument at trial; their arguments are not so antagonistic that acceptance of Gilbert's defense would have precluded Harris's acquittal. See Lampkins, 682 N.E.2d at 1272.

Accordingly, we decline to reverse the trial court's denial of the motion to sever.

### Conclusion

Harris was not placed in grave peril by prosecutorial misconduct during the State's rebuttal argument. The trial court did not err when it denied Harris's mid-trial motion for severance.

Affirmed.

NAJAM, J., and PYLE, J., concur.