**Martin Roy EMERSON, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 07A01–1009–CR–486.

Court of Appeals of Indiana.

Aug. 3, 2011.

erred in refusing to grant their motion for class certification.

Stacy R. Uliana, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Michael Gene Worden, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BRADFORD, Judge.

Appellant–Defendant Martin Roy Emerson appeals his convictions for Operating a Vehicle While Intoxicated, a Class C mis-

demeanor,[1] and Operating a Vehicle While Driving Privileges are Forfeited for Life, a Class C felony.[2] We affirm.

## FACTS AND PROCEDURAL HISTORY

On January 5, 2008, at approximately ten o'clock in the morning, Chief Deputy Town Marshal Stephanie R. Loerzel of the Nashville Police Department was driving near Nashville, Indiana in an unmarked car when she saw a van traveling at a high rate of speed in the opposite direction. Deputy Loerzel used her radar gun and determined that the van was going eighty-five miles per hour in a forty-five-mile-per-hour zone. A second radar scan indicated that the van was going eighty-two miles per hour. Deputy Loerzel saw that a male was driving the van.

Deputy Loerzel activated her car's lights and followed the van. The van turned onto a driveway and was out of Deputy Loerzel's view for a few seconds. As Deputy Loerzel drove up to the van, a female, later identified as Sophia Morgan, entered the van via the driver's side door. A male, later identified as Emerson, was sitting in the front passenger seat. As Deputy Loerzel approached the van, Emerson screamed at her, demanding to know why she had stopped them. Emerson kept reaching under his seat and would not show Deputy Loerzel his hands, so she ordered him out of the van and handcuffed him. Deputy Loerzel noted that Emerson had a strong odor of alcoholic beverage on his person, and his speech was slurred. Furthermore, Emerson was unsteady on his feet and had bloodshot eyes. Another officer, Deputy Sheriff Robert Worland, arrived and took Emerson to jail. Deputy Worland also detected a strong odor of alcoholic beverage emanating from Emer-

son. Back at the site of the traffic stop, Morgan thanked Deputy Loerzel for stopping Emerson, stating that "he was just driving, you know, just crazy." Tr. p. 218. Morgan further stated Emerson had been drinking, and that once they stopped in the driveway, "he made her switch seats." Tr. p. 219. Later, at the jail, Emerson admitted to Deputy Loerzel that he had been drinking.

The State charged Emerson with operating a vehicle while intoxicated in a manner endangering a person, a Class A misdemeanor, and operating a vehicle after driving privileges were forfeited for life, a Class C felony. Emerson's first trial ended in a hung jury. His second trial was a bifurcated proceeding. First, Emerson was tried on the charge of operating a motor vehicle while intoxicated in a manner endangering a person ("phase one"). At the close of that phase, the jury found Emerson guilty of operating a vehicle while intoxicated as a Class C misdemeanor. Immediately after the jury rendered its verdict, Emerson was tried on the charge of operating a vehicle after driving privileges were forfeited for life ("phase two"). At the end of that phase, the jury determined that Emerson was guilty of that charge. The trial court sentenced Emerson accordingly, and he now appeals.

## DISCUSSION AND DECISION

### I. Prosecutorial Misconduct

 Emerson contends that the prosecutor engaged in misconduct during voir dire and in opening and closing arguments to the jury during phase one of the trial. Specifically, he notes that the State repeatedly referred to him as a "bully" and contends that the State induced the jury to

1. Ind.Code § 9–30–5–2(a) (2007).

2. Ind.Code § 9–30–10–17 (2007).

convict him for reasons other than guilt or innocence.

When reviewing a claim of prosecutorial misconduct, we must first consider whether the prosecutor engaged in misconduct. *Williams v. State,* 724 N.E.2d 1070, 1080 (Ind.2000). We must then consider whether the alleged misconduct placed [Emerson] in a position of grave peril to which he should not have been subjected. *Id.* In judging the propriety of the prosecutor's remarks, we consider the statement in the context of the argument as [a] whole. *Hollowell v. State,* 707 N.E.2d 1014, 1024 (Ind.Ct.App. 1999)....

When an improper argument is alleged to have been made, the correct procedure is to request the trial court to admonish the jury. *Dumas v. State,* 803 N.E.2d 1113, 1117 (Ind.2004). If the party is not satisfied with the admonishment, then he or she should move for mistrial. *Id.* Failure to request an admonishment or to move for mistrial results in waiver. *Id.* Where a claim of prosecutorial misconduct has not been properly preserved, our standard of review is different from that of a properly preserved claim. More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. *Booher v. State,* 773 N.E.2d 814, 817 (Ind.2002). Fundamental error is an extremely narrow exception that allows a defendant to avoid waiver of an issue. It is error that makes "a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process ... present[ing] an undeniable and substantial potential for harm." *Benson v. State,* 762 N.E.2d 748, 756 (Ind.2002).

*Hand v. State,* 863 N.E.2d 386, 393–94 (Ind.Ct.App.2007).

In the instant matter, Emerson neither objected nor requested an admonishment nor moved for a mistrial when the prosecutor made *any* of the comments that he now argues constituted prosecutorial misconduct. Therefore, he has waived these arguments and must show that any misconduct resulted in fundamental error to succeed on appeal. *See id.*

### A. Voir Dire

■■■ Emerson claims that the prosecutor committed misconduct while questioning the prospective jurors during voir dire.

"The purpose of voir dire is to determine whether a prospective juror can render a fair and impartial verdict in accordance with the law and the evidence." *Joyner v. State,* 736 N.E.2d 232, 237 (Ind.2000). More specifically, such examination of prospective jurors is used to discover whether a prospective juror has any opinion, belief, or bias which would affect or control his determination of the issues to be tried, providing a basis to exercise the right of challenge either peremptory or for cause. *Holmes v. State,* 671 N.E.2d 841, 854 (Ind.1996). However, our Supreme Court has condemned the practice of counsel utilizing voir dire as an opportunity to " 'brainwash' or attempt to condition the jurors to receive the evidence with a jaundiced eye." *Robinson v. State,* 266 Ind. 604, 610, 365 N.E.2d 1218, 1222 (1977). Questions that examine jurors as to how they would act or decide in certain contingencies or when presented with certain evidence are improper. *Perryman v. State,* 830 N.E.2d 1005, 1008 (Ind.Ct.App.2005).

However, proper examination may include questions designed to disclose the jurors' attitudes about the type of offense charged. *Id.* The parties may also attempt to uncover the jurors' precon-

ceived ideas about a defense the defendant intends to use. *Id.* To reveal the jurors' attitudes and ideas, the parties may pose hypothetical questions, provided they do not suggest prejudicial evidence not adduced at trial. *Id.*

*Gregory v. State,* 885 N.E.2d 697, 706–07 (Ind.Ct.App.2008).

Here, the prosecutor asked prospective jurors in two separate sections of the jury pool a number of questions relating to various topics during voir dire. One topic included in the prosecutor's questions to both sections of the jury pool was bullying. The prosecutor asked nearly identical questions to both sections of the jury pool, including whether the prospective jurors would do something just because a bully told them to, and whether prospective jurors would believe a statement was true just because a bully said it. These questions were asked in general terms and were not put in context to any specific hypothetical circumstance.

The State argues that the prosecutor asked questions relating to bullying because he was trying to determine whether evidence of bullying would affect the prospective jurors' ability to render an impartial verdict. While the prosecutor's questions were not presented in those exact terms, we believe that the prosecutor's questions could indeed help the prosecutor, as well as defense counsel, determine whether evidence of bullying would negatively affect any of the potential jurors' ability to render an impartial verdict. Thus, we conclude that the prosecutor's questions were proper and relevant. However, to the extent that these questions may have been improper and irrelevant, we conclude that these statements were more isolated than pervasive. They occurred over the course of particularly lengthy voir dire proceedings during which the prosecutor asked prospective jurors questions relating to numerous topics. Accordingly, we do not believe that the prosecutor's questions relating to bullying made it impossible for Emerson to receive a fair trial. Thus, we conclude that the prosecutor's questions regarding bullying during voir dire did not amount to fundamental error.

**B. Opening and Closing Arguments**

 Emerson also claims that the prosecutor committed misconduct by suggesting that he was a bully during opening and closing arguments. In arguments to the jury, a prosecutor can state and discuss the evidence and reasonable inferences that can be derived therefrom so long as there is no implication of personal knowledge that is independent of the evidence. *Id.* at 708 (citations omitted). Furthermore, statements of opinion are not prohibited. *Id.*

In setting forth his case and asking the jury to find that Emerson drove while intoxicated, the prosecutor suggested that Emerson "tried to bully his way out of it." Tr. pp. 185, 188, 356, 358, 365. The prosecutor presented evidence that Emerson, in an aggressive fashion, attempted to convince Deputy Loerzel that he was not driving when she saw the vehicle in question speed by her, despite the fact that Deputy Loerzel observed that a male was driving. In addition, the prosecutor presented evidence that Morgan initially told Deputy Loerzel and her aunt that Emerson was driving, but later testified, in Emerson's presence, that she was driving when Deputy Loerzel stopped the vehicle. The altered account that Morgan presented at trial indicates that Emerson could have pressured or bullied Morgan to change her testimony. The record further demonstrates that the trial court specifically instructed the jury that the arguments presented by the attorneys were not evidence,

and should not be considered as such. (Appellant's App. 179)

Upon review, we believe that the question of whether Emerson attempted to alter the outcome of both the initial stop and his subsequent trial through aggressive behavior that could reasonably be viewed as a form of bullying is relevant to show a consciousness of guilt. *See Washington v. State,* 273 Ind. 156, 160, 402 N.E.2d 1244, 1248 (1980) (providing that any testimony tending to show an attempt to conceal or suppress implicating evidence is relevant as revealing consciousness of guilt). Thus, in light of the trial court's instruction regarding the attorney's arguments and the evidence presented at trial, we conclude that the prosecutor's comments were relevant to the case and were presented in a manner that made clear that the statements in question amounted to nothing more than his opinion in that regard. Therefore, no misconduct was committed, much less fundamental error.

■■■ Further, while we agree that the prosecutor's request that the jurors "stand up to this bully" was improper, we observe that the prosecutor's statement was fleeting, and again recognize that the trial court advised the jury that statements and comments by counsel are not evidence. Thus, we do not believe that the prosecutor's improper, but fleeting, request that the jury "stand up to the defendant" did not place Emerson in a position of grave peril or make it impossible for him to receive a fair trial. *See Wright v. State,* 690 N.E.2d 1098, 1112 (Ind.1997) (providing that the prosecutor's statement, while improper, was fleeting, and when considered together with the trial court's instruction that the prosecutor's statement was not evidence did not place defendant in a position of grave peril). Accordingly, the prosecutor's improper statement did not

amount to fundamental error. *See Hand,* 863 N.E.2d at 394.

## II. Jury Instructions

■■■ Emerson next contends that the trial court abused its discretion in failing to instruct the jury on "when and how they could find Emerson guilty of the lesser offense[.]" Appellant's Br. p. 16. Our review of the record demonstrates that Emerson did not object to the trial court's instructions at trial. As a result, Emerson's challenge to the instructions on appeal is waived. *See Munford v. State,* 923 N.E.2d 11, 13 (Ind.Ct.App.2010). In order to circumvent waiver, Emerson argues that the trial court's failure to include an instruction regarding when the jury could find Emerson guilty of a lesser included offense constituted fundamental error. When we consider a claim of fundamental error with respect to jury instructions, we look to the jury instructions as a whole to determine if they were adequate. *Munford,* 923 N.E.2d at 14 (quoting *Ringham v. State,* 768 N.E.2d 893, 898 (Ind.2002)).

■■■ As this court has explained in *Munford* and *Murray v. State,* 798 N.E.2d 895, 899–900 (Ind.Ct.App.2003):

The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict. In reviewing a trial court's decision to give a tendered jury instruction, we consider (1) whether the instruction correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions. The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion. To constitute an abuse of discretion, the instructions given must be erroneous,

and the instructions taken as a whole must misstate the law or otherwise mislead the jury. We will consider jury instructions as a whole and in reference to each other, not in isolation.

*Munford,* 923 N.E.2d at 14 (citing *Murray v. State,* 798 N.E.2d at 899–900).

Emerson argues that "[n]owhere was the jury instructed on the fact that they could find Emerson guilty of the [C]lass C misdemeanor instead of the [C]lass A misdemeanor and what elements the State must prove beyond a reasonable doubt in order for them to do so." Appellant's Br. p. 17. The instruction given to the jury relating to the charged offense of operating a vehicle while intoxicated reads as follows:

> The statute defining the offense of Operating a Vehicle While Intoxicated which was in force at the time of the offense charged reads as follows:
>
> A person who operates a vehicle while intoxicated commits a Class C misdemeanor. A person who operates a vehicle while intoxicated in a manner that endangers a person commits a Class A misdemeanor.
>
> Before you may convict the Defendant, the State of Indiana must have proved each of the following beyond a reasonable doubt:
>
> 1. The Defendant:
> 2. operated a vehicle
> 3. while intoxicated
> 4. in a manner that endangered a person.
>
> If the State fails to prove each of these elements beyond a reasonable doubt, you must find the defendant not

guilty of operating a vehicle while intoxicated, a Class A misdemeanor.

Appellant's App. p. 173. The verdict form presented to the jury allowed the jury to find Emerson guilty of either operating a vehicle while intoxicated as a Class A misdemeanor or a Class C misdemeanor. (Appellant's App. 183)

Upon review, we conclude that the trial court's instruction to the jury, while not ideal, sufficiently informed the jury of the statutory elements for both Class C misdemeanor and Class A misdemeanor operating a vehicle while intoxicated.[3] The jury's verdict that Emerson committed the lesser included offense indicates that the jury understood that it could find Emerson guilty of Class C misdemeanor operating a vehicle while intoxicated if it did not believe that the State proved the additional element that Emerson operated a vehicle in a manner that endangered a person beyond a reasonable doubt. Accordingly, we conclude that the trial court's failure to include a separate instruction regarding when the jury could find Emerson guilty of the lesser included offense did not constitute fundamental error.

### III. Arguments to the Jury During Phase Two

 Emerson also contends that the trial court erred by constraining his opening and closing arguments to the jury during phase two of the trial, which addressed the charge of operating a vehicle after driving privileges were forfeited for life. Specifically, Emerson contends that the trial court improperly limited him from arguing to the jury that it could determine the law.[4]

---

3. We remind the trial court, however, that the better practice would be to explicitly instruct the jury regarding lesser included offenses.

4. Emerson argues that this issue is preserved for appellate review. The State does not dis-

agree. Based on our review of the transcript, we agree with Emerson and review this issue on the merits.

Control of arguments to the jury is assigned to the discretion of the trial judge. *Rouster v. State,* 600 N.E.2d 1342, 1347 (Ind.1992). Unless there is an abuse of this discretion clearly prejudicial to the rights of the accused, the ruling of the trial court will not be disturbed. *Id.* On appeal, we will not find an abuse of discretion unless the trial court's decision is clearly against the logic and effect of the facts and circumstances before it. *Nelson v. State,* 792 N.E.2d 588, 591 (Ind.Ct.App.2003), *trans. denied.*

Emerson argues that the trial court limited his arguments to the jury during both opening and closing argument. The record reveals that during opening arguments, the trial court admonished the jury after Emerson suggested that the jury could determine whether the law was appropriate. The trial court's admonishment provided that while the jury has the right to determine both the law and facts, it may not disregard the law once it determines what the law is. In closing arguments, the trial court instructed Emerson that he could not ask the jury to disregard the law. Instead, Emerson told the jury that it must find that the State proved each of the elements of the charged offense.

After reviewing the transcript, we fail to see how Emerson was prejudiced by the trial court's admonishment of the jury during opening arguments. Emerson argued to the jury that it had the power to determine the law, and the trial court reinforced Emerson's argument in the admonishment. Emerson now contends that the trial court's admonishment gave jurors the impression that his argument was improper, but we disagree in light of the strong similarities between Emerson's argument and the trial court's admonishment. Furthermore, where the trial court adequately admonishes a jury, an admonishment is presumed to cure any error that may have

occurred. *Johnson v. State,* 901 N.E.2d 1168, 1173 (Ind.Ct.App.2009). Emerson does not dispute the accuracy of the admonishment and has not offered any evidence to rebut the presumption that the admonishment cured the error. Instead, he merely speculates that the jury viewed him negatively due to the admonishment.

Furthermore, during closing arguments the parties and the trial court had additional discussion about the jury's power to determine the law, but Emerson agreed with the trial court that the jury could determine the law but could not disregard the law. In addition, Emerson's opening and closing arguments ultimately focused on a question of fact, specifically whether the State had proved Emerson's criminal intent, rather than a question of law. In light of Emerson's agreement with the trial court on the scope of the jury's authority and the factual nature of his argument to the jury, we cannot conclude that the trial court abused its discretion and prejudiced Emerson by admonishing the jury and by directing him not to tell the jury that it could disregard the law.

Emerson argues that his trial on the charge of operating a vehicle after driving privileges were forfeited for life is similar to a habitual offender proceeding. He further contends that jurors have greater latitude to determine the law in habitual offender proceedings, and therefore, he should have been allowed to argue to the jury that they also had greater latitude to determine the law in his trial. Emerson's argument contravenes our Supreme Court's precedent. As our Supreme Court has noted, in habitual offender proceedings:

> the jury is entitled to make a status determination over and above its determination of whether the predicate offenses have been established. Because the nature of status is different than

guilt for a particular crime, the interplay between the habitual offender statute ... and the umbrella "law and the facts" statute ... operates to give a jury latitude in defining habitual offender status in a way that it does not in defining guilt or innocence.

*Walden v. State,* 895 N.E.2d 1182, 1185 (Ind.2008). In this case, the jury was asked to determine whether Emerson was guilty of the charge of operating a vehicle after a driving privileges were forfeited for life, so it was not entitled to additional latitude in determining the law.[5] We find no abuse of discretion in the trial court's rulings on this issue.

The judgment of the trial court is affirmed.

BARTEAU, SRJ, concurs in part and dissents in part with opinion.

VAIDIK, J., concurs.

BARTEAU, Senior Judge, concurring in part and dissenting in part.

I concur in Section III of the majority's opinion. I respectfully dissent from the majority's resolution of Section I, on the issue of prosecutorial misconduct.[6] Based on my review of the evidence, I conclude that the State's actions constituted both prosecutorial misconduct and fundamental error, and I would reverse Emerson's conviction for driving while intoxicated.

During voir dire, the State began its questioning by asking panelists about bullying. The State asked panelists questions such as, "because a bully tells you to do something you do it?" Tr. p. 107. The State also asked, "[b]ecause a bully says something is true, do you...[.] do you believe it?" *Id.* Later, when additional panelists were being questioned, the State asked a potential juror, "do you stand up to a bully?" Tr. p. 152. He asked another potential juror, "[j]ust because a bully says something is so, does it make it so?" Tr. p. 153. I agree with the majority that attorneys may question panelists in a variety of ways to ascertain the panelists' potential for bias or partiality. However, in this case, the State never directly asked any of the panelists if evidence of bullying would affect their ability to render an impartial verdict. Instead, the State's questions focused on whether panelists have "[stood] up to a bully" and whether a bully's statements should be accepted as the truth. Tr. p. 153.

Furthermore, during opening arguments on the charge of operating a vehicle while intoxicated, the State asserted, "[a]nd when [Emerson] was pulled over, he tried to bully his way out of it. Yelling at the

---

**5.** Emerson cites to *Womack v. State,* 738 N.E.2d 320 (Ind.Ct.App.2000), *trans. denied,* to support his claim that the jury was entitled to greater latitude to determine the law in his case. *Womack* is distinguishable. In that case, a panel of this Court was asked to determine the propriety of an instruction to the jury that it should find the defendant guilty of possession of marijuana as a Class D felony if it determined that he had a prior marijuana conviction. *Id.* at 325–26. The panel concluded that the instruction, taken as a whole, correctly stated the law. *Id.* at 327. In the current case, we are asked to determine the propriety of Emerson's jury arguments, not a jury instruction. Furthermore, in this case, unlike in *Womack,* the jury was not instructed

that it "should" find Emerson guilty of the offense of operating a vehicle after a lifetime forfeiture of driving privileges if it determined that his driving privileges had been forfeited.

**6.** Emerson also claims that the trial court erred in instructing the jury on the charge of operating a vehicle while intoxicated, which the majority addresses in Section II of the opinion. However, I would reverse Emerson's conviction for that offense. In addition, as the majority notes, Emerson did not preserve that issue for appellate review. For these reasons, I would decline to address the jury instruction issue.

police officer saying, you got it wrong. At the end of the evidence that you hear today, you will come to the conclusion that this bully needs to be stood up to, and that he committed this crime, and that he's guilty." Tr. p. 185. The State further argued, "I'm going to ask you to stand up to this bully and tell him that he committed a crime with a verdict of guilty." Tr. p. 188. During closing arguments for phase one of the trial, the prosecutor stated, "[a]nd he was trying to bully this female police officer into believing something that wasn't true. And that, ladies and gentlemen, is what he's trying to do today." Tr. p. 356. Later in its argument, the State contended, "[a]gain, he's being a bully. He's trying to scare her away from what she knew she s..[sic] is immediate aggression." Tr. p. 358. The State concluded, "[a]nd I ask you for a guilty finding. I want you to stand up and tell this bully that he cannot hide the truth, that he was, in fact, drunk driving, and find him guilty." Tr. p. 365.

Standing alone, each question or comment during voir dire and opening and closing arguments may not have constituted misconduct that placed Emerson in grave peril. However, I conclude that when taken as a whole, the State's repeated characterization of Emerson as a bully conditioned the jury to conclude that Emerson was a person of poor character and encouraged the jury to "stand up to" Emerson and find him guilty of driving while intoxicated because of perceived character flaws rather than because he committed the offense at issue. The State's improper theme likely had a strong persuasive impact on the jury because the State's case was strongly contested. Loerzel testified and described her encounter with Emerson and Morgan as set forth above. However, Morgan also testified at trial and directly contradicted Loerzel on the crucial issues. Morgan testified that

she, not Emerson, was driving on the day in question. In addition, Morgan denied telling Loerzel that she was thankful that Loerzel had stopped them or that Emerson had been driving and had made her switch seats with him. Given the repeated and consistent nature of the State's comments and the conflicting witness testimony, I conclude that Emerson was placed in grave peril and that the State's remarks constituted prosecutorial misconduct. *See Oldham v. State*, 779 N.E.2d 1162, 1176, *trans. denied* (determining that the prosecutor's comments constituted misconduct because they demonstrated that the prosecutor asked the jury to convict on the basis of the defendant's character).

In addition, it appears to me that the cumulative effect of the State's misconduct was so substantial and prejudicial to Emerson that it made a fair trial impossible on the charge of operating while intoxicated. The State's bullying comments permeated that phase of the trial. Consequently, I would reverse Emerson's conviction for operating a vehicle while intoxicated. *See Lainhart v. State*, 916 N.E.2d 924, 939 (Ind.Ct.App.2009) (determining that the prosecutor's comments during voir dire and closing argument constituted improper indoctrination and vouching and amounted to fundamental error).

Although I would reverse Emerson's conviction for operating a vehicle while intoxicated, I conclude that there is sufficient evidence to retry him for that charge. Consequently, I would allow the State to retry Emerson, if the State so chooses. *See id.* (noting that if, viewed as a whole, the State's evidence would have been sufficient to sustain the judgment, retrial does not offend double jeopardy principles).

With respect to the second phase of the trial, during which Emerson was tried for operating a motor vehicle after driving privileges were forfeited for life, I would

allow that conviction to stand. Although the same jurors sat in judgment for both portions of the trial, the trial court provided new preliminary and final jury instructions for the trial for phase two. In addition, the parties presented new opening and closing arguments, and the State did not characterize Emerson as a bully during that portion of the trial. Furthermore, Loerzel did not testify during phase two of the trial, and her encounter with Emerson was not at issue. Instead, the evidence consisted of Emerson's driving record, his past guilty plea to a charge of operating a vehicle as a habitual traffic offender, and his testimony. Given the different charge, jury instructions, and evidence at issue in the second phase of the trial, and the State's cessation of characterizing Emerson as a bully, I cannot conclude that the State's misconduct earlier in the proceedings made a fair trial impossible on the charge of operating a vehicle after driving privileges were forfeited for life. Consequently, I do not find fundamental error with respect to that conviction and would not reverse that conviction due to prosecutorial misconduct.

For these reasons, I respectfully concur in part and dissent in part.