**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**P. JEFFREY SCHLESINGER**
Appellate Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| TRACEY B. YOUNG, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 45A05-1210-CR-525 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Diane Ross Boswell, Judge
Cause No. 45G03-1003-FC-27

June 12, 2013

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Tracey B. Young appeals his convictions of two counts of Criminal Confinement,[1] one as a class C felony and one as a class D felony, Strangulation[2] as a class D felony, and Domestic Battery[3] as a class D felony. Young presents three issues for review:

1. Did the trial court abuse its discretion in admitting evidence that Rhonda Martin obtained a protective order against Young after the first choking incident?

2. Did the trial court abuse its discretion in admitting Officer Douglas Drummond's testimony explaining why he was dispatched to the scene?

3. Was Young subjected to fundamental error by prosecutorial misconduct?

We affirm.

Young and Martin had four children, ranging from seven to twelve years of age, in an on-again-off-again, eleven-year relationship. In Lake County, at approximately 10 p.m. on November 18, 2009, Young, who had been drinking alcohol and smoking crack, entered into the residence that he and Martin shared. Young claimed that his mother and niece told him he was not the biological father of his son. While attempting to leave the residence, Martin stated, "just let me leave." *Id.* at 44. Young explained that Martin could not leave because he had the keys and had locked all the doors, including an iron gate in the living room.

Martin called Young's mother, but Martin quickly hung up due to Young's continued arguing. Martin then tried to call Young's niece, but Young unplugged the cord. Martin tried to reach the police on the second phone in the home, but Young ripped the phone cord from that phone too.

---

[1] Ind. Code Ann. § 35-42-3-3 (West, Westlaw current through P.L.171 with effective dates through May 7, 2013).
[2] I.C. § 35-42-2-9 (West, Westlaw current through P.L.171 with effective dates through May 7, 2013).
[3] I.C. § 35-42-2-1.3 (West, Westlaw current through P.L.171 with effective dates through May 7, 2013).

Young approached Martin, leaned over, placed his hand around her neck, and started choking Martin until she could not breathe. Young eventually released Martin, and she went into the bathroom and discovered bloody fingernail impressions on her neck. Young said, "bitch, you're not hurting." *Id.* at 73.

Once again, Martin tried to leave, and Young tried to stop her. At about that time, Young's niece arrived, honked her car horn, and Martin exited the residence. Young's niece took Martin to the police department, where Martin filed for an emergency protective order, which was granted. A two-year protective order was subsequently issued.

In January 2010, Martin and her children stopped at Young's sister's residence. While Martin and the children were sitting in the vehicle, Young suddenly appeared, approached the vehicle, and started cussing. Young reached into the vehicle, grabbed Martin's cellular phone and car keys, and stated, "bitch, you're not going to be able to call the police." *Id*. at 55. Young sat in the backseat, placed his hand around Martin's neck, and started choking her. Young stated, "bitch, I'll kill you," *Id*. at 55. Young eventually released Martin, and Martin drove away with Young still in the vehicle. Young ordered Martin to take him to his uncle's home. Martin obliged and then proceeded to the police department to report the incident. Young was charged with six counts stemming from incidents on November 18, 2009, and January 12, 2010.

At trial, Martin testified that she sought and received a protective order after the first choking incident. The trial court overruled Young's objection to this testimony. Officer Drummond testified that he was dispatched to Martin's residence in the early morning hours

3

of November 19, 2009 for domestic battery and confinement. Young objected to the testimony about the dispatch, and the trial court overruled the objection. During the closing argument, the State noted that Ashton Trice, who Young called to testify, did not see the first incident of choking because he caught only the end of the argument. The jury found Young guilty of criminal confinement as a class C felony, criminal confinement as a class D felony, strangulation as a class D felony, and domestic battery as a class D felony. The trial court sentenced Young to an aggregate term of eight years in the Department of Correction, with the last three years served in community corrections.

1.

Young contends the trial court abused its discretion when it admitted evidence of Martin's protective order. Questions concerning the admissibility of evidence are committed to the trial court's sound discretion, and a decision whether to admit certain evidence will be reversed only upon a showing of abuse of discretion resulting in the denial of a fair trial. *Johnson v. State*, 831 N.E.2d 163 (Ind. Ct. App. 2005). A court abuses its discretion if its ruling is clearly against the logic and effect of the facts before the court. *Id*. Also, a trial court's evidentiary ruling will be upheld upon the basis of any legal theory supported by the record. *Rush v. State*, 881 N.E.2d 46 (Ind. Ct. App. 2008). We will not reweigh evidence and the court considers conflicting evidence most favorable to the trial court's ruling. *Id.*

During trial, Young initially objected to Martin's testimony concerning her procurement of a protective order on relevancy grounds. Indiana Evidence Rules 401 and 402 define relevant evidence as any evidence that has the tendency to make the existence of

4

any fact of consequence more or less probable, and if the proffered evidence meets this standard, it is admissible subject to the other rules of evidence. On appeal, Young concedes the evidence of the protective order, "may be relevant." (*Appellant's Brief* at 5).

On appeal, Young offers a different rationale for his claim that the testimony was inadmissible. He contends Martin's testimony concerning the protective order is inadmissible under Evid. R. 404(b), which concerns evidence of prior bad acts. "A party may not object to the admission of evidence on one ground at trial and seek reversal on appeal based on a different ground . . .[the] claim is waived." *Boatner v. State*, 934 N.E.2d 184,187 (Ind. Ct. App. 2010). Although Young objected at trial, those grounds offered differed from the one argued on appeal. Therefore, the issue is waived. *Boatner v. State,* 934 N.E.2d 184.

2.

Young also contends the trial court abused its discretion by allowing Officer Drummond's testimony explaining why he was dispatched to Martin's home. Young objected to Officer Drummond's testimony on hearsay grounds. Hearsay is an out-of-court statement offered to prove the truth of the matter asserted. Evid. R. 801(c). *Mulligan v. State*, 487 N.E.2d 1309 (Ind. 1986) explains, "testimony about a radio transmission is not hearsay when it is offered to explain an officer's actions subsequent to receiving the dispatch rather than to prove the truth of the matters asserted." Officer Drummond did not testify about what the dispatcher said. Rather, Officer Drummond described the reason for the dispatch and his response to it, which is not hearsay. Officer Drummond's testimony was not offered to prove

Young committed the acts alleged; rather, the testimony was offered to show why Officer Drummond was at the scene.

3.

Finally, Young argues that he was subjected to prosecutorial misconduct rising to the level of fundamental error. In order to preserve a claim of prosecutorial misconduct, a defendant must make a contemporaneous objection, request an admonishment, and if that admonishment is not sufficient to cure the error, he must request a mistrial. *Washington v. State*, 902 N.E.2d 280 (Ind. Ct. App. 2009). If the defendant failed to make a contemporaneous objection to alleged prosecutorial misconduct at trial, he can assert the claim for appellate review only if he alleges fundamental error. Fundamental error occurs when the error is so prejudicial, it makes a fair trial impossible. *Emerson v. State*, 952 N.E.2d 832 (Ind. Ct. App. 2011). Moreover, fundamental error is a narrow exception that allows a defendant to avoid waiver on review. *Id.* at 836.

Young argues on appeal that the prosecutor's comments during closing arguments, which addressed the lack of evidence presented by the defense, amounted to prosecutorial misconduct. To the contrary, the prosecution may comment on the lack of evidence as long as those comments are focused on the absence of any evidence to contradict the State's claim and not on the accused's failure to testify. *Martinez v. State*, 549 N.E.2d 1026 (Ind. 1990). Furthermore, the State is allowed to comment on statements or issues to which the defense opens the door. *Marshall v. State*, 438 N.E.2d 986 (Ind. 1982).

During trial, Young testified on his own behalf and called his nephew, Ashton Trice,

to testify. Trice, who lived with Young on occasion, testified that he did not see the altercation on November 18, 2009, but he heard it. During Young's closing argument, defense counsel explained that Trice did not see the choking incidents and that only Martin and Officer Drummond saw the marks on Martin's neck. In response, the State enumerated several examples of similarities between Trice's testimony and the testimonies given throughout the trial. The State explained, "defense never asked Ashton Trice about what happened [in January 2010] . . . Not a single question for an eyewitness who's there that day. Curious. That's something to really consider." *Transcript* at 248. The State did not shift the burden of proof to Young. Instead, the State responded to Young's argument and commented on the defense's lack of explanation of the uncontradictory nature of their witness's testimony. *Martinez v. State*, 549 N.E.2d 1028. Even if the prosecution's statements were inappropriate, they do not amount to "an undeniable and substantial potential for harm," since the statement was too fleeting to have a major impact. *Emerson v. State*, 952 N.E.2d at 836.

Young argued that because he was denied access to his children for three years, Martin was able to influence the children negatively against him. He also argued that by allowing the children to testify, the prosecution was assisting Martin in exerting a negative influence concerning the children's and Young's relationship. The State rebutted this claim by pointing out evidence suggesting that the children actually miss their father, the children never said they hated their father, or that Martin tried to keep them from him. Again, the State was responding to allegations the defense made, which does not amount to

7

prosecutorial misconduct. *Marshal v. State*, 438 N.E.2d 989.

Therefore, we conclude that Young has failed to establish error, let alone fundamental error.

Judgment affirmed.

ROBB, C.J., and CRONE, J., concur.