**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**KURT A. YOUNG**
Nashville, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| ROBERT O. MORRIS, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1211-CR-571 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Mark D. Stoner, Judge
Cause No. 49G06-1206-FC-42866

**June 12, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Defendant, Robert Morris (Morris), appeals his conviction for Count I, battery, a Class C felony, Ind. Code § 35-42-2-1(a)(3).

We affirm.

## ISSUE

Morris raises one issue on appeal, which we restate as follows: Whether the trial court committed fundamental error by not instructing the jury on self-defense.

## FACTS AND PROCEDURAL HISTORY

On June 23, 2012, thirty-five year old Morris lived with his mother, Treasa Morris (Treasa), on the east side of Indianapolis in Marion County, Indiana. That morning, Treasa was cleaning her home, which she normally did on Saturdays. Morris was in a bedroom upstairs when Treasa began cleaning the upstairs bathroom. This bathroom was used by Morris, and according to Treasa, was "really dirty." (Transcript p. 49-50).

As Treasa cleaned the bathroom, she was talking to herself about how dirty the bathroom was and that "she should not have to clean up after a grown [] man." (Tr. p. 50). Morris came out of the bedroom, holding a bottle of wine, and said that the bathroom was "not that dirty." (Tr. p. 50). Treasa told Morris that she was not talking to him, and he responded that he knew "damn well" she was talking to him because nobody else was there. (Tr. p. 51). Morris became angry and started yelling and cursing loudly at his mother while still holding the bottle of wine.

2

Treasa told Morris that if he did not calm down she would have to ask him to leave her home, and Morris responded that he had paid her so he did not have to leave. Treasa responded to Morris that she was not Keshia, his girlfriend with whom Morris had lived prior to living with Treasa. Morris became angered by Treasa mentioning Keshia, and continued cursing at her, telling her, "You've got to respect me. You're going to [ ] respect me. You going to respect me." (Tr. pp. 52-53). Because Treasa became scared, she attempted to go in her daughter's bedroom to call a friend to come over. While she was entering the bedroom, Morris hit her in the head and she fell to the ground.

As Morris began hitting Treasa, she looked at her hand and two of her fingers appeared broken. She told Morris that her fingers were broken and asked him to stop hitting her, but he continued. Morris proceeded to tell Treasa that she needed to apologize for something that had happened to him as a boy. In an effort to get Morris to stop, she apologized, but he continued hitting her.

Morris continually beat his mother and Treasa's hand and head were hurting. Blood was gushing from her hand and fingers. Morris told Treasa that he knew she would call the police, that he would get locked up, and that when he got out, "he was going to return and kill her." (Tr. p. 56). Treasa tried assuring him she would not call the police if he would stop the beating. Throughout the entire beating, Morris held the wine bottle in his hand, which resulted in Treasa being covered in wine. After Morris finally stopped and returned to his bedroom, Treasa left her home and went to a neighbor's house. She told her neighbor, Paula Grays (Grays), that her son had hit her, and Grays

3

invited Treasa into her home and had her sit down. However, Treasa fell out of the chair onto the floor and lost consciousness. Grays called the police.

Shortly after, Officers Scott Emminger (Officer Emminger) and Brian Durham from the Indianapolis Metropolitan Police Department arrived and spoke with Treasa about the incident. Treasa told Officer Emminger that Morris had assaulted her. Before Treasa was to be transported to the hospital, she asked Officer Emminger if he could retrieve her purse from her home. Both Officers entered Treasa's home, where they encountered Morris. They retrieved Treasa's purse and arrested Morris. Neither Officer had noticed any recent injuries to Morris as a result of this incident. Treasa spent two days in the hospital. She received eight staples in her head, and eventually had to undergo two surgeries on her hands and fingers. She also had bruising on her back and leg.

On June 26, 2012, the State filed an Information charging Morris with Count I, battery, a Class C felony, I.C. § 35-42-2-1; and Count II, battery, a Class A misdemeanor, I.C. § 35-4-2-1. On October 3, 2012, a jury trial was held and at its conclusion, the jury returned a guilty verdict on both Counts. On October 17, 2012, the trial court conducted a sentencing hearing. Because of double jeopardy concerns, the trial court declined to enter judgment of conviction on Count II, but sentenced Morris to four years imprisonment on Count I, battery, a Class C felony.

Morris now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

Morris contends that the trial court committed fundamental error in not giving an instruction on self-defense. However, Morris acknowledged that he failed to object to the instructions given and also failed to tender any additional instructions regarding self-defense. According to Trial Rule 51(C), a defendant who fails to object to an instruction or fails to tender an instruction at trial waives any challenge to that instruction on appeal. *See also Baker v. State*, 948 N.E.2d 1169, 1178 (Ind. 2011).

In an attempt to circumvent his waiver of the self-defense instruction, Morris claims that the lack of instruction regarding self-defense constituted fundamental error. However, as stated by this court:

> The fundamental error doctrine is extremely narrow, and applies only when the error constitute[s] a blatant violation of basic principles, creating or potentially creating substantial harm, and the resulting error denies the defendant fundamental due process.

*Covey v. State*, 929 N.E.2d 813, 819 (Ind. Ct. App. 2010).

In considering a claim of fundamental error with respect to jury instructions, "we look to the jury instructions as whole to determine if they were wholly adequate." *Emerson v. State*, 952 N.E.2d 832, 838 (Ind. Ct. App. 2011), *trans. denied*. Furthermore, we have explained,

> The purpose of jury instructions is to inform the jury of the law applicable to the facts without misleading the jury and to enable [them] to comprehend the case clearly and arrive at a just, fair, and correct verdict. In reviewing a trial court's decision to give a tendered jury instruction, our court has consider[ed] (1) whether the instruction correctly states the law, (2) is supported by the evidence in the record, and (3) is not covered in substance by other instructions.

5

*Id.* The trial court has discretion in instructing the jury, and we will reverse only when the instructions amount to an abuse of discretion. *Id.* To constitute an abuse of discretion, the instruction[s] given must be erroneous, and the instructions taken as a whole must misstate the law or otherwise mislead the jury.

For a valid self-defense claim a defendant must show that, he "is justified in using reasonable force against another person to protect himself from what that person reasonably believes to be the imminent use of unlawful force." I.C. § 35-41-3-2(a). Moreover, our supreme court set forth three factors that a defendant must prove to support his claim for self-defense: (1) that he was in a place where he had a right to be; (2) that he acted without fault; and (3) that he had a reasonable fear or apprehension of death or great bodily harm. *Howard v. State*, 755 N.E.2d 242, 247 (Ind. Ct. App. 2001). In addition to the aforementioned, a claim for self-defense encompasses both subjective and objective components. *Huls v. State*, 971 N.E.2d 739, 745 (Ind. Ct. App. 2012).

The evidence indicates that Morris is a 35-year old man who had been drinking at the time of the beating. The evidence also shows that Morris was approximately a foot taller than his mother, and outweighed her by approximately forty pounds. Immediately following the incident, the police observed that there were no recent injuries to Morris. Treasa suffered serious injuries from her encounter with Morris including the need for eight staples in her head and two surgeries on her hands which included placing pins and plates in her broken fingers as well as her hands. The amount of force used by Morris on

6

his mother far exceeded any possible use of force needed to protect him from his small and elderly mother.

Morris points to the Affidavit for probable cause as support for his claim that he was entitled to a jury instruction on self-defense. Specifically, the Affidavit that was entered into evidence without objection stated, "She attacked me first and I defended myself and that's all I'm going to say." (Exh. p. 11). However, apart from a single self-serving statement by Morris to the Officers, there was no further mention of self-defense at trial. Even during cross-examination of his mother, the only questions Morris asked her were if there was anyone else in the house, whether she was aware that Morris could not walk without crutches, if she asked Morris to leave the house, and if she has ever been convicted of a burglary. There were no questions regarding Treasa attacking Morris or whether Morris needed to reasonably protect himself from imminent bodily harm from his elderly mother.

In sum, because there is no evidence to support the tendering of the instruction, we conclude that the trial court did not abuse its discretion in refusing to give a self-defense instruction. Thus, the trial court did not err, let alonecommit fundamental error by not offering a jury instruction on self-defense.

## CONCLUSION

Based on the foregoing, we conclude that the trial court did not commit fundamental error by refusing to give an instruction on self-defense to the jury.

7

Affirmed.

BRADFORD, J. and BROWN, J. concur