## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 21 2017, 8:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Jill A. Gonzalez<br>Public Defender's Office<br>Muncie, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana<br><br>Michael Gene Worden<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Aaron J. King,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | March 21, 2017<br><br>Court of Appeals Case No.<br>18A02-1610-CR-2477<br><br>Appeal from the Delaware Circuit Court<br><br>The Honorable John M. Feick, Judge<br><br>Trial Court Cause No.<br>18C04-1305-FA-3 |

**Crone, Judge.**

## Case Summary

A jury found Aaron J. King guilty of rape, criminal deviate conduct, criminal confinement, and strangulation. On appeal, King argues that fundamental error occurred when the prosecutor talked with the victim during a break in her testimony and that his strangulation conviction is not supported by sufficient evidence. We affirm.

## Facts and Procedural History[1]

The facts most favorable to the convictions are that King and K.N. dated in high school and briefly during college, but they had only occasional contact for several years before the evening of April 21, 2013, when King called K.N. because he and his fiancée were having relationship difficulties. K.N. picked up King and drove them back to her apartment. They talked for several hours and fell asleep on her bed. In the morning, K.N. dropped off King at another apartment complex.

Two days later, King arrived unexpectedly at K.N.'s apartment and knocked on the door. K.N., who had been sleeping, answered the door and invited him in. They went into her bedroom and rested until K.N. had to get ready for a graduate school class. King said that he was going out to get a breakfast

---

[1] King's brief contains numerous grammatical and clerical errors. *See, e.g.*, Appellant's Br. at 6 ("The two of them had went [sic] back to [the victim's] room …."); *id.* ("The Defendant then had sex with the Defendant [sic] …."); *id.* at 13 ("In addressing a claim of inefficiency [sic] of the evidence …."). We advise counsel to proofread more carefully in the future.

sandwich, but instead he bought duct tape at a hardware store and returned to K.N.'s apartment. As K.N. opened the door to leave for class, King shut the door, carried her into her bedroom, and pushed her onto the bed. K.N. asked King what he was doing. He told her to shut up, pulled down her pants, and raped her. At one point, he forced her to perform fellatio. He also put his hands on her neck several times and squeezed so hard that "[e]verything was going black" and she "was gasping for air." Tr. Vol. 4 at 86. During the assault, K.N. yelled and hit the walls, so King put duct tape over her mouth and bound her wrists together. He ultimately removed the duct tape, apologized to K.N., and left the apartment. K.N. called 911. She was taken to the hospital for examination and was kept overnight due to swelling in her throat.

The State charged King with class A felony rape, class B felony criminal deviate conduct, class D felony criminal confinement, and class D felony strangulation. A jury found him guilty as charged, and the trial court sentenced him to forty years. King now appeals. Additional facts will be provided as necessary.

## Discussion and Decision

## Section 1 – King has failed to establish that fundamental error occurred when the prosecutor talked with K.N. during a break in her testimony.

The prosecutor called K.N. as a witness during the State's case in chief. She was then cross-examined by King's counsel. During cross examination, the prosecutor asked if K.N. could take a break. The trial court called a recess. Before the jury was brought in, King's counsel expressed displeasure with the

prosecutor "in the middle of [her] cross [taking K.N.] out in the hallway for ten minutes, fifteen minutes[.]" Tr. Vol. 4 at 152. The court asked King's counsel if she wanted to make a record "before the jury comes in" regarding whether the prosecutor told K.N. what to say. *Id.* King's counsel replied that she did not. The jury was brought in, and K.N. took the stand. The following exchange occurred between King's counsel and K.N.:

> Q [K.N.], we just took a break because you asked for a break, correct?
>
> A Yes.
>
> Q You were out in the hallway for about ten, fifteen minutes?
>
> A Yes.
>
> Q Were you talking with [the prosecutor] and his staff?
>
> A Yes.
>
> Q Were you asking him about what to do about my questions?
>
> A I used the restroom, and we did converse.
>
> Q Converse about what to say about my questions? Don't look him—
>
> A Not—
>
> Q -- Answer the question.
>
> A Not specifically. Just because you are coming off very aggressively. So, I just was asking him if that was normal, and how to respond.

Q  Okay.  So, you were asking him how to respond to my questions?

A  If I should be as aggressive back to you as you are to me.

Q  You can be as aggressive to me as you want to be. I don't care.

[PROSECUTOR]:  Objection. If she's going to make smart comments.

THE COURT:  None of this.  None of this.  None of this.

[KING'S COUNSEL]:  I withdraw.  I'm sorry, Judge.  I withdraw it.

*Id*. at 153-54.

[6]  On appeal, King argues that the trial court should have declared a mistrial instead of allowing K.N. "to continue to testify after she was coached by the prosecution during a recess in the middle of her cross examination." Appellant's Br. at 10.  King claims that the "[u]nethical coaching" was prosecutorial misconduct.  *Id*. at 12.  King failed to request either an admonishment or a mistrial, which results in waiver.  *Emerson v. State*, 952 N.E.2d 832, 836 (Ind. Ct. App. 2011), *trans. denied*.  "Where a claim of prosecutorial misconduct has not been properly preserved, our standard of review is different from that of a properly preserved claim."  *Id*.  "More specifically, the defendant must establish not only the grounds for the misconduct but also the additional grounds for fundamental error. Fundamental error is an extremely narrow exception that allows a defendant to

avoid waiver of an issue." *Id.* (citation omitted). "It is error that makes 'a fair trial impossible or constitute[s] clearly blatant violations of basic and elementary principles of due process … present[ing] an undeniable and substantial potential for harm.'" *Id.* (quoting *Benson v. State*, 762 N.E.2d 748, 756 (Ind. 2002)).

[7] King has failed to establish that the prosecutor's actions made a fair trial impossible. He cites no authority for the proposition that a party may not request a break to calm a flustered witness, and the record indicates that the prosecutor and K.N. discussed only the tone, and not the content, of her testimony going forward. Furthermore, K.N. was cross-examined about the conversation in front of the jury. In sum, King has failed to establish fundamental error.

## Section 2 – King's strangulation conviction is supported by sufficient evidence.

[8] King also contends that his strangulation conviction is not supported by sufficient evidence. In reviewing an insufficient evidence claim, we neither reweigh evidence nor assess witness credibility. *Bell v. State*, 31 N.E.3d 495, 500 (Ind. 2015). "Rather, if the testimony believed by the trier of fact is enough to support the verdict, then the reviewing court will not disturb it." *Id.*

[9] The State alleged that King committed strangulation when he, "in a rude, insolent or angry manner, did knowingly or intentionally apply pressure to the throat or neck of [K.N.] or obstruct the nose or mouth of [K.N.] in a manner

that impeded normal breathing or blood circulation of [K.N.]" Appellant's App. Vol. 2 at 27. K.N. testified that King choked her with his hands. King points to testimony by two nurses that purportedly establishes that marks on K.N.'s neck were "made by an object and not hands" and argues that "[t]here is absence of circumstantial evidence that the marks on [K.N.'s] neck were made by Aaron King's hands." Appellant's Br. at 14-15. At trial, King himself testified that he put his hands around K.N.'s neck and choked her during what he claimed was rough consensual sex. The jurors saw photographs of the marks on K.N.'s neck and were free to disbelieve the nurses' testimony and believe K.N.'s testimony that King choked her with his hands during nonconsensual sex.[2]

[10] King also claims that there is no evidence that he knowingly or intentionally applied pressure to K.N.'s throat or impeded her normal breathing. K.N. testified that "[e]verything was going black" and that she "was gasping for air" and "thought that [she] was going to die[.]" Tr. Vol. 4 at 86. Also, she was kept in the hospital overnight due to swelling in her throat. King's argument is an invitation to reweigh evidence and assess witness credibility, which we may not do. The testimony believed by the jury is sufficient to support King's strangulation conviction, and therefore we affirm.

---

[2] King's incredible dubiosity claim is meritless.

Affirmed.

Baker, J., and Barnes, J., concur