**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jul 10 2013, 5:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DAVID W. STONE, IV**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JACOB FULLER, )<br>)<br>Appellant-Defendant, )<br>)<br>vs. )<br>)<br>STATE OF INDIANA, )<br>)<br>Appellee-Plaintiff. ) | No. 48A02-1210-CR-848 |

APPEAL FROM THE MADISON CIRCUIT COURT
The Honorable David A. Happe, Judge
Cause No. 48C01-1103-MR-434

**July 10, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BAILEY, Judge**

**Case Summary**

Jacob Fuller ("Fuller") appeals his convictions and sentences for two counts of Murder, a felony,[1] and one count of Robbery, as a Class A felony.[2] We affirm.

**Issues**

Fuller presents five issues for review:

I. Whether there was a fatal variance between the charging information and the evidence presented at trial;

II. Whether the trial court abused its discretion in admitting evidence not timely disclosed by the State in discovery;

III. Whether the prosecutor committed misconduct by calling a witness for the sole purpose of impeaching his testimony;

IV. Whether improper closing argument constituted fundamental error; and

V. Whether Fuller's sentence is a product of an abuse of discretion or is inappropriate.

**Facts and Procedural History**

In November of 2010, Keya Prince ("Prince") and Stephen Streeter ("Streeter") lived on Menifee Street in Anderson, Indiana. When a neighbor approached the residence on November 29, 2010, she detected a foul odor emanating from an open window. Police were summoned to conduct a welfare check. After entering the residence, they found the bodies of Prince and Streeter. Prince had died of a gunshot through her torso, piercing her heart. Streeter had died of a gunshot to his head. Televisions and electronic equipment were missing from the house. Also missing was a large amount of cash that Streeter had recently possessed.

---

[1] Ind. Code § 35-42-1-1. This section has since been re-codified. We refer to the statute in effect at the time of the offense.

[2] I.C. § 35-42-5-1. This section has since been re-codified. We refer to the statute in effect at the time of the offense.

In the very early morning of the next day, Anderson Police Officer Ian Spearman ("Officer Spearman") was patrolling a neighborhood when he stopped Fuller and his companion, Na-son Smith ("Smith") on suspicion of a curfew violation. Smith initially provided a false name. Meanwhile, Anderson Police Officer Brandon Grant ("Officer Grant") had been advised of a 9-1-1 call from the same neighborhood. A citizen had reported seeing a young man toss away a gun as Officer Spearman approached. Officer Grant radioed Officer Spearman to use extreme caution. He also advised as to the correct identity of Fuller's companion. Fuller and Smith were placed under arrest.

During the ensuing police investigation, Fuller was identified as the individual who had been observed tossing a gun. The tossed gun was located, examined and determined to have been the weapon that had fired a bullet into Prince's body. Several witnesses reported that Fuller, Smith, Martez Brown ("Brown"), and a fourth young man had been seen in possession of large amounts of cash and had gone on a shopping spree. Eventually, Brown gave a statement to police wherein he claimed that he had gone with Fuller and Smith to the Prince-Streeter residence, where Fuller had shot Prince and Smith had shot Streeter.

The State alleged that Fuller, then fifteen years old, was a juvenile delinquent. Jurisdiction was waived from the juvenile court and Fuller was charged with Murder, Burglary,[3] Robbery, and Theft.[4] He was brought to trial on July 17, 2012. A jury acquitted Fuller of Burglary and convicted him of the remaining charges. Due to double jeopardy

---

[3] I.C. § 35-43-2-1. This statute has since been re-codified. We refer to the statute in effect at the time of the offense.

[4] I.C. § 35-43-4-2. This statute has since been re-codified. We refer to the statute in effect at the time of the offense.

concerns, the trial court did not enter a judgment upon the Theft conviction and entered judgment upon the Robbery conviction as a Class B felony. Fuller was then given consecutive sentences of sixty-five years imprisonment for each of the Murder convictions and twenty years imprisonment for the Robbery conviction, providing for an aggregate sentence of one hundred fifty years. He now appeals.

**Discussion and Decision**

Variance Between Charging Information and Proof

The State first alleged that the crimes at issue were committed on or about November 27, 2010. Fuller filed a notice of alibi, giving notice that he "was at several locations on November 27, 2010" and requesting greater specificity from the State. (App. 42.) On April 28, 2011, Fuller filed an amended notice of alibi stating that "he was at his home on the date and at the time of the alleged offenses" and requesting a more specific statement of the alleged time, date, and location. The State did not respond to the alibi notice or amended alibi notice. However, in May of 2011, the information was amended to allege that the crimes were committed "on or about November 29, 2010." (App. 53.) The trial court denied a final motion by the State to amend the charging information to allege that the crimes were committed "on or between November 26, 2010 and November 29, 2010." (App. 68.)

Indiana Code section 35-36-4-2 provides in relevant part:

When a defendant files a notice of alibi, the prosecuting attorney shall file with the court and serve upon the defendant, or upon his counsel, a specific statement containing:
(1) the date the defendant was alleged to have committed the crime; and
(2) the exact place where the defendant was alleged to have committed the crime;

4

that he intends to present at trial. However, the prosecuting attorney need not comply with this requirement if he intends to present at trial the date and place listed in the indictment or information as the date and place of the crime.

Indiana Code section 35-36-4-3(b) concerns the consequences of the State's lack of response:

> If at the trial it appears that the prosecuting attorney has failed to file and serve his statement in accordance with section 2(a) of this chapter, and if the prosecuting attorney does not show good cause for his failure, then the court shall exclude evidence offered by the prosecuting attorney to show:
> (1)     that the defendant was at a place other than the place stated in the information or indictment; and
> (2)     that the date was other than the date stated in the information or indictment.

At trial, Fuller unsuccessfully objected to evidence relative to dates other than November 29, 2010. He also moved for a mistrial and for directed verdicts, claiming that the State should have been confined to offer proof of crimes occurring only on that specific date. He now argues that the trial court abused its discretion by admitting all evidence of events occurring outside November 29, 2010 and that he is entitled to a reversal of his convictions on this basis. In essence, Fuller alleges a fatal variance between the proof at trial and the charging information.

A variance is an essential difference between proof and pleading. Reinhardt v. State, 881 N.E.2d 15, 17 (Ind. Ct. App. 2008). When time is not an element of the crime charged, or of the essence of the offense, the State is only required to prove that the offense was committed during the statutory period of limitations; as such, the State is not required to prove the offense occurred on the particular date alleged. Poe v. State, 775 N.E.2d 681, 686 (Ind. Ct. App. 2002), trans. denied. "[A]lthough time becomes of the essence when the alibi

5

statute has been invoked, it is also well settled that a variance, in order to be fatal, must be of such substantial nature as to mislead the accused in preparing and maintaining his defense or be of such a degree as is likely to place him in second jeopardy for the same offense." Quillen v. State, 271 Ind. 251, 253, 391 N.E.2d 817, 819 (1979).

In Sangsland v. State, 715 N.E.2d 875, 879 (Ind. Ct. App. 1999), trans. denied, a panel of this Court explained that the mere filing of an alibi notice does not require the State to prove, as an element of the offense, that the crimes occurred on a specific date:

> Although our supreme court has stated that the filing of a notice of alibi defense makes the time of the offense critical or 'of the essence,' it has also made clear that the mere filing of an alibi defense does not impose a greater burden of proof on the State than would be otherwise required absent such a filing. . . . [T]he mere fact that a defendant raises an alibi defense does not necessarily make time an essential element of an offense. However, where the State's answer to the notice of alibi and evidence points exclusively to a specific date, and the defendant presents a defense based on that date, the jury's consideration of the defendant's guilt should be restricted to that date.

Here, Fuller filed alibi notices to which the State filed no response. The charging information, as finally amended, alleged that Fuller had committed crimes "on or about" November 29, 2010 as opposed to one specific date. (App. 53.)

The State's evidence at trial was not inconsistent with this allegation. The victims were found on November 29, 2010, and had evidently been dead for a few days, based upon the condition of the bodies, the last known communications with the victims, and the timing of Fuller's shopping spree. Because the challenged evidence concerned events that occurred "on or about" November 29, 2010 – that is, they occurred in the preceding days – there was no variance between the charging information and the proof at trial. See Poe, 775 N.E.2d at

6

686-87 (charging information that alleged a crime occurred on or about June 23, 2000 did not limit the State to only the events of June 23, 2000).  See also Sisson v. State, 985 N.E.2d 1, 12 (Ind. Ct. App. 2012) (State's failure to narrow the time frame – the entire month of June – in response to an alibi notice was not fundamental error), trans. denied.

We also observe that Fuller's alibi notice and amended alibi notice did not reference November 29, 2010.  In those notices, Fuller claimed to have an alibi for November 27, 2010.  However, the defense testimony produced at trial was directed toward events of November 29, 2010.  Fuller's mother, Doris Fuller, testified that she awoke at 5:00 a.m. and checked on Fuller.  When she left for work at 5:30 to 6:00 a.m., Fuller was still home.  According to Doris, when she returned at 3:30 to 4:00 p.m., she saw Fuller walking down the street near her house.  She lacked knowledge of his whereabouts just prior to that encounter.  This testimony would, at best, comprise a partial alibi for November 29, 2010, a date different from that referenced in Fuller's notices.

As such, the admission of the State's evidence at trial as to dates other than November 29, 2010 did not contravene statutory authority; nor did it circumvent Fuller's opportunity to present an alibi defense.  We find no reversible error in this regard.

Alleged Discovery Violations

Fuller contends that the trial court abused its discretion by admitting evidence that the State had failed to timely and fully disclose to the defense pursuant to the trial court's discovery order.  In particular, he claims that photographs obtained from his cellular

telephone should have been excluded and that one of the State's witnesses, Wal-Mart loss prevention employee Dottie Hart ("Hart"), should not have been permitted to testify.

A trial court exercises broad discretion in ruling on the admissibility of evidence, and an appellate court should disturb its ruling only where it is shown that the court abused its discretion. Camm v. State, 908 N.E.2d 215, 225 (Ind. 2009). Generally, the admission or exclusion of evidence will not result in a reversal on appeal absent a manifest abuse of discretion that results in the denial of a fair trial. Dorsey v. State, 802 N.E.2d 991, 993 (Ind. Ct. App. 2004). The primary factors that a trial court should consider when it addresses a claimed discovery violation are whether the breach was intentional or in bad faith and whether substantial prejudice has resulted. Cain v. State, 955 N.E.2d 714, 718 (Ind. 2011).

When Fuller was arrested, his cellular telephone was confiscated. At the beginning of the trial, the State disclosed that a video had been retrieved from the telephone. On the final day of the State's case-in-chief, the prosecutor expressed an intention to offer photographs derived from that video. The photographs, which had been taken in the afternoon of November 27, 2010, depicted Fuller and two companions flashing large amounts of cash.

Fuller objected and requested exclusion of the photographs, claiming a discovery violation.[5] According to Fuller's counsel, he had been shown a video clip at the outset of the trial, but had not anticipated photographs from the video and was unable to investigate

---

[5] This is not a circumstance in which the prosecutor failed entirely to disclose material and mitigating evidence, and thus Fuller is not claiming a constitutional violation under Brady v. Maryland, 373 U.S. 83 (1963). Fuller's counsel advised the trial court that only a discovery violation was being alleged.

adequately.[6]  The trial court inquired of counsel whether he wanted to contact the cellular service provider but counsel did not directly respond to the inquiry.  Nor did counsel request a continuance.

The State now argues that Fuller's substantial rights were not prejudiced because he had to have known what was in his own cellular telephone database and he did not avail himself of the opportunity for further investigation during a continuance.  Even assuming a discovery violation, "the preferred remedy for a discovery violation is a continuance" and "exclusion of evidence is only appropriate if the defendant show that the State's actions were deliberate or otherwise reprehensible, and this conduct prevented the defendant from receiving a fair trial."  Cain, 955 N.E.2d at 718.

Here, there is no indication that the State engaged in deliberate or reprehensible action denying Fuller a fair trial.  It appears that, from argument presented to the trial court, Fuller and his defense counsel were aware that the cellular telephone was in the State's possession since Fuller's arrest.  The defense made no request to examine it, even after the State indicated that a video with evidentiary value had been discovered.  We fail to discern how the photographs derived from the video were potentially more prejudicial than the video.  Indeed, Fuller's counsel did not accept the trial court's offer to allow further investigation through the cellular service provider.  Fuller was not blind-sided by the State's proffer of evidence or

---

[6] It appears that the State obtained a search warrant to search Fuller's cellular telephone for data around the time that the trial commenced and advised Fuller of the video upon discovering it.  There is no error when the State provides a defendant with evidence as soon as the State is in possession of the evidence.  Warren v. State, 725 N.E.2d 828, 832 (Ind. 2000).  Accordingly, Fuller does not allege a discovery violation with respect to the video in particular.

deprived of recourse. As such, he has failed to demonstrate that the trial court abused its discretion by admitting the photographs.

Fuller also complains that the State was allowed to present Hart as a surprise witness. At trial, Fuller requested a bench conference in anticipation of the State calling Hart as a witness. Counsel stated that he had been able to "briefly talk with" Hart that morning, but indicated he "would object as to the fact the witness was not disclosed prior to trial." (Tr. 386.) The State responded that the supplemental witness list had included an entry for a Wal-Mart loss-prevention employee, but at the time of disclosure the State was "still trying to figure out what her last name was." (Tr. 387.)

Over Fuller's objection, Hart was permitted to testify. According to Hart, while she was taking her lunch break on November 27, 2010 at a Subway restaurant inside Wal-Mart, she encountered three "loud and obnoxious" teenagers with $100 bills. (Tr. 392.) She identified Fuller as one of the group.

We are inclined to agree with Fuller that he could not have learned Hart's identity and conducted a pre-trial interview based upon generic notations in the supplemental witness list of March 2011. She was in essence a surprise witness. Nonetheless, "[w]here a party fails to timely disclose a witness, courts generally remedy the situation by providing a continuance rather than disallowing the testimony." Barber v. State, 911 N.E.2d 641, 646 (Ind. Ct. App. 2009). Here, no continuance was requested. Moreover, Fuller's counsel was able to confer with Hart just prior to her testimony. The testimony was brief and cumulative of other

10

testimony that Fuller and his companions had been in possession of a large amount of cash on November 27, 2010. We cannot conclude that Fuller sustained substantial prejudice.

Mistrial for Improper Witness Impeachment

Brown was also charged with the murder of Prince and Streeter, but was to be tried separately from Fuller. At Fuller's trial, Brown was called as a witness for the State. In anticipation of Brown's testimony, Fuller objected that Brown would likely be asserting his rights under the Fifth Amendment of the United States Constitution and the State was simply calling him as a witness to impeach him. After a hearing outside the presence of the jury, Brown was permitted to testify. In so doing, he repeatedly acknowledged but contradicted his prior police statement. Fuller requested a mistrial, claiming that the prosecutor had engaged in misconduct by calling Brown as a witness for the purpose of improper impeachment and that a jury admonishment would be inadequate.

In reviewing a claim of prosecutorial misconduct, we determine (1) whether there was misconduct by the prosecutor; and (2) whether that misconduct, under the circumstances, placed the defendant in a position of grave peril to which the defendant should not have been subjected. Kent v. State, 675 N.E.2d 332, 335 (Ind. 1996). The gravity of peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the conduct. Id.

"[I]t is improper for the prosecutor to call as a witness a codefendant when the prosecutor knows in advance that the witness will invoke the Fifth Amendment and refuse to testify." Borders v. State, 688 N.E.2d 874, 879 (Ind. 1997). Too, it is improper to call a

11

witness when the prosecutor knows that useful evidence will not be elicited. Although Indiana Rule of Evidence 607 authorizes a party to impeach the credibility of its own witness, "the rule is abused if the party is permitted to call a co-defendant as a witness, when the party knows that the co-defendant will not give useful evidence, just so the party can introduce otherwise inadmissible hearsay evidence against the defendant, 'in the hope that the jury would miss the subtle distinction between impeachment and substantive evidence – or, if it didn't miss it, would ignore it.'" Julian v. State, 811 N.E.2d 392, 397 (Ind. Ct. App. 2004) (quoting U.S. v. Webster, 734 F.2d 1191, 1192 (7th Cir. 1984), trans. denied.

To determine whether the State has abused the rule, this Court considers whether the prosecutor examined the witness for the primary purpose of placing before the jury inadmissible evidence. Id. However, otherwise inadmissible evidence that is placed before the jury when the State has a legitimate basis to call the witness will not be considered improper. Id.

Here, the trial court conducted a hearing outside the presence of the jury, and the following exchange took place:

Prosecutor: Are you planning to testify in this case today?

Brown: Yes, sir.

Prosecutor: Are you requesting, are you gonna take the Fifth Amendment if I call you?

Brown: No, sir.

Prosecutor: You're gonna testify without a grant of immunity? Meaning, if I grant, if the State of Indiana grants you immunity, nothing can be used against you ah, in your own trial because you're a defendant in this case as well, right?

Brown: Yes, sir.

Prosecutor: Okay. You've decided that you do not want immunity for your testimony, is that correct?

Brown: Yes, sir.

(Tr. 410-11.) The jury was recalled and Brown declined to seek Fifth Amendment protection. Instead, he acknowledged that he had been charged with the murders of Streeter and Prince, and that he was "here to testify about [his knowledge of] that case." (Tr. 412.) Brown testified that he had given information to Detective Brooks about the murders. However, when asked if he was involved, Brown responded, "No, sir." (Tr. 414.) He agreed that he had told Detective Brooks of his involvement.

Ultimately, Brown admitted having told Detective Brooks: he, Smith, and Fuller had robbed Streeter of $7,000, electronics, and marijuana; Fuller had killed Prince with a forty-caliber handgun while Brown waited in the living room; Fuller had admitted to that killing; and Smith had shot Streeter in the head. Nonetheless, Brown testified that he did not participate in a robbery or murder and Fuller had not confessed to Brown that he had shot Prince. He maintained, during cross-examination, that he was testifying truthfully and had falsified his statement to Detective Brooks.

Chronologically, Brown admitted making various statements to Detective Brooks before he denied their veracity and insisted that he had decided to tell the truth. Nonetheless, the cumulative effect was that Brown's trial testimony was effectively impeached with his

13

prior statements. Even so, there is no indication of record that the prosecutor anticipated this development before calling Brown as a witness.

Outside the presence of the jury, Brown expressed his intention to testify without invoking his Fifth Amendment rights and without immunity. Once he was called as a witness, Brown stated that his lawyer was present and he had consulted with him. Brown acknowledged that he had given a statement to Detective Brooks, and the prosecutor asked Brown "what did you tell him happened?" (Tr. 414.) After a bench conference, the prosecutor re-phrased his question as: "were you involved in the murder of Kaya Prince and Stephen Streeter?" and Brown inexplicably answered, "No, sir." (Tr. 414.)

Although the prosecutor then questioned Brown regarding his prior statement, as could be expected under the circumstances, it does not appear that the prosecutor called Brown as a witness knowing that he would not provide useful information. There is no indication of record that the prosecutor had any reason to believe that, as the testimony developed, Brown would ultimately claim the falsity of each incriminating statement he had made to police. Fuller has made no showing that the prosecutor called a witness who was expected to either seek Fifth Amendment protection or decline to provide useful information. And while he asserts that "no curative action was taken," Appellant's Brief at 21, Fuller requested no curative measure. He has demonstrated no prosecutorial misconduct placing him in grave peril.[7]

---

[7] Fuller also claims that a mistrial was warranted because a witness handed a recording to the prosecutor during his examination of Brown, and the prosecutor then conducted "a theatrical performance" by waving the recording in front of the jury. Appellant's Brief at 22. According to Fuller, this had an intended effect of

14

Prosecutorial Misconduct in Closing Argument

Fuller contends that he was deprived of a fair trial by improper closing argument. When a defendant alleges that a prosecutor has made an improper argument at the guilt or penalty phase of a trial, the defendant should request an admonishment from the trial court. Cain, 955 N.E.2d at 721. If he or she believes the admonishment to be insufficient, a mistrial should be requested. Id. When a claim of prosecutorial misconduct has thus been properly preserved, we examine it pursuant to a two-step process. Id. We determine whether the prosecutor engaged in misconduct, and if so, whether the misconduct, under all the circumstances, placed the defendant in a position of grave peril to which he or she should not have been subjected. Id.

Here, Fuller neither objected nor requested an admonishment. He did not move for a mistrial based upon any allegedly improper argument. As such, he may obtain relief only if his claim is one of fundamental error, that is, a clearly blatant violation of basic and elementary principles that would deny him fundamental due process if left uncorrected. Id.

The prosecutor's remarks are to be considered in the context of the argument as a whole. Hand v. State, 863 N.E.2d 386, 394 (Ind. Ct. App. 2007). It is proper for a prosecutor to argue both law and fact during final argument and to propound conclusions

threatening Brown that he needed to respond appropriately or the recording would be played. To the extent that Fuller may be said to have raised a separate issue regarding this matter, he has failed to show his entitlement to a mistrial. Following Brown's testimony, Fuller sought a mistrial on alternate grounds that Brown had been improperly impeached and that the prosecutor had raised a "spectacle" by waving something around in front of the jury. (Tr. 437.) The prosecutor responded that he did not realize he had been holding a recording of a jail call. The trial court offered to instruct the jury "the DVD is not in evidence" and the jury was instructed accordingly. (Tr. 440.) We are not persuaded from this record that Fuller was placed in grave peril, particularly where Fuller made no offer of proof at trial and has not advised this Court of the substance of the allegedly threatening material.

based upon his or her analysis of the evidence. Id. Additionally, a prosecutor is entitled to respond to allegations and inferences raised by the defense even if the prosecutor's response would otherwise be objectionable. Id.

First, Fuller challenges the following portion of the prosecutor's closing argument:

Senseless crime. Senseless. But, he wants you to walk him on a technicality. He wants you to walk him out of here on a technicality. . . . Ladies and gentlemen, don't let him sell you with [sic] oceanfront property in Kansas. Don't let him do it.

(Tr. 744-45.) According to Fuller, this is akin to suggesting that he had been trying to trick the jury. He directs our attention to Nevel v. State, 818 N.E.2d 1, 5 (Ind. Ct. App. 2004) (wherein a panel of this Court observed that it was improper for the prosecutor to comment that the defendant's argument was a smoke screen and a tactic used by defense counsel to distort facts). We find the reference to a "senseless" crime to be fair commentary upon the evidence that the sole motive for two murders was financial gain. See Cooper v. State, 854 N.E.2d 831, 837 (Ind. 2006) (discussing use of unflattering and accusatory terms and re-affirming prosecutor's right to comment upon the evidence). Too, we are not persuaded that the prosecutor's comment on oceanfront property in Kansas – albeit suggesting deceit on the part of the defense – rises to the level of a blatant violation of elementary principles denying Fuller due process.

Fuller also asserts that the prosecutor did not limit his discussion to the facts in evidence when he argued:

Well, one of the things that's really funny about this case, really unusual, is usually when you find people that are coming in here, who are inmates and in the system, they ain't helping the police, "I'm not coming to testify," they're

16

not helping nobody over here. When you've got criminals coming in here like Rashawn Ross and Antoine Skinner testifying against guys like this is cause they know this shouldn't have happened. You don't go up into people's house like that and murder them. These are people that were well liked in this community and they're not gonna stand for that kind of nonsense. When you've got people that have been in the system doing, what, twenty-five years, that Antoine was doing, coming in and testifying against guys like this cause this ain't right. They came in here to testify cause this kind of stuff should not be happening. You don't go up in somebody's house, shoot them in the back of the head, shoot this woman who had nothing to do with anything. You have hardcore criminals coming in to testify in cases like that.

(Tr. 720.) According to Fuller, there was no evidence as to reluctance or willingness of criminals to testify and the prosecutor enhanced their credibility by his commentary. It is true that "argument of counsel should not invite the jury to consider matters not in evidence as a basis for their decision." Craig v. State, 267 Ind. 359, 366, 370 N.E.2d 880, 883 (1977). We are not persuaded, however, that the jury was invited to base their decision on the alleged rarity of convicted persons giving trial testimony. Nor did the prosecutor vouch for the credibility of the two witnesses he mentioned by name.

Fuller also takes issue with commentary about the propensity of drug users to rent out cars:

And then run down Diana Farris, who it came from, through her daughter-in-law who's got the drug problem and her husband, Diana's son, and they rent this out. That's what, that's what happens all the time, they rent out cars. In the drug world, they rent out cars. You get geeked out and you need drugs, you've got a car, you rent it to people, they give you money or they give you drugs and you let them have your car for a while, and that's what happened right here. These guys are out driving that car around on their shopping spree.

(Tr. 723-24.) The State presented evidence that Fuller and his companions exchanged crack cocaine for the use of a van owned by Diana Farris, to which Amanda Dean had access. The

evidence suggests that they used the van to go shopping and spend some of the proceeds from robbing Streeter and Prince. To the extent that the argument goes beyond a reference to this specific instance and suggests it is a common practice to loan a vehicle for drugs, we do not find such to be fundamental error.

Fuller also takes issue with the prosecutor's references to a jail call. The prosecutor reminded the jury that Fuller had talked about beating the charge, acknowledged that the State had a gun and then admitted "that's some pretty hard shit." (Tr. 733.) The prosecutor went on to say: "He knows he's got a problem with that gun cause there is no explanation for it. He's got the murder weapon and there's no explanation for why he has it." (Tr. 733.) Fuller argues that this constitutes an improper comment upon his failure to testify.

In Griffin v. California, 380 U.S. 609 (1965), the United States Supreme Court held that the Fifth Amendment prohibits the prosecution from commenting on a defendant's decision not to testify at trial. A comment on the refusal to testify would amount to a penalty imposed by courts for exercising a constitutional privilege against self-incrimination. Id. at 614. However, our supreme court has explained that if the prosecutor's comment in its totality is addressed to other evidence rather than the defendant's failure to testify, it is not grounds for reversal. Boatright v. State, 759 N.E.2d 1038, 1043 (Ind. 2001). "The prosecutor may in fact comment on the uncontradicted nature of the State's evidence without running afoul of the Fifth Amendment." Owens v. State, 937 N.E.2d 880, 893 (Ind. Ct. App. 2010), trans. denied. There is no reversible error if the comment, in its totality, focuses on evidence other than the defendant's failure to testify. Hand, 863 N.E.2d at 396.

18

Here, the prosecutor did not directly mention Fuller's decision not to testify when he reminded the jury that Fuller had verbally acknowledged "that's some pretty hard shit" with reference to his possession of a gun. When the prosecutor went on to comment that the unexplained possession was a problem for Fuller, he directed the jury's attention to the pretrial event of a telephone call as opposed to trial testimony or omission. In the context of discussing Fuller's jail conversation, the prosecutor referred to Fuller's presumed recognition – at that point in time – that there was no innocent explanation for his possession of the weapon that killed Prince. We do not consider this to be a direct or indirect comment upon Fuller's eventual failure to testify. The prosecutor offered no "invitation to draw an adverse inference from a defendant's silence." Dumas v. State, 803 N.E.2d 1113, 1118 (Ind. 2004).

Fuller also asserts that the prosecutor played upon the fears of the jury by emphasizing that, although Fuller appeared in court clean cut and well dressed, he was much more intimidating as an armed intruder confronting Streeter and Prince. However, Fuller develops no corresponding argument with regard to this alleged prosecutorial misconduct.

Finally, Fuller claims that the prosecutor invited a conviction because of the interest of the surrounding minority community. More specifically, he challenges the following argument:

> Stuff like this in the, on the westside in the African American community, word goes around quick. Word goes around quick. People start hearing about this, talking about this. You saw those people that were out at the scene, the word is flying. You saw many people in this courtroom. They're interested because this crime should not have happened and he should not have committed that murder. And they're here because they know what's happened and they want to make sure justice is served. People are interested and the word is spreading across the community. . . . You came in here, you all took

19

an oath to try this case and do justice and do the right thing for this community. . . . Do your job, do justice, be just, stand up for this community, stand up for these people out here that are looking forward to justice being served.

(Tr. 721, 733-34.) Fuller claims that the prosecutor thereby asked the jury "to convict the defendant to please a segment of the community." Appellant's Brief at 27. We find the prosecutor's comments akin to those in Hand, 863 N.E.2d at 395, where the prosecutor told the jury that they were the "moral conscience of the community and must take into account all of the facts and circumstances in this case." The jury was further urged to convict Hand for the sake of his wife (the victim), the couple's children, and the community as a whole. Id. The Hand Court concluded that "the gravamen of those comments was that the evidence presented at trial supported the State's charges and, therefore, Hand should be held accountable for his actions and convicted." Id. at 396. Here, when the prosecutor stated that the community had great interest in justice and urged the jury to "do justice," he essentially claimed that the State had met its burden of proof and "justice" would be accomplished by convicting Fuller. (Tr. 734.)

In sum, Fuller has not persuaded us that there was prosecutorial misconduct in the delivery of closing argument, much less fundamental error.

### Sentence

A person who commits Murder faces a sentencing range of between forty-five years and sixty-five years with the advisory sentence being fifty-five years. See I.C. § 35-50-2-3. The sentencing range for a Class B felony is from five years to twenty years imprisonment, with an advisory sentence of ten years. See I.C. § 35-50-2-5. For his convictions of two

20

counts of Murder and one Class B felony, Fuller received an aggregate sentence of one hundred and fifty years, the maximum sentence.

In imposing this sentence, the trial court found five aggravators: Fuller's history of juvenile offenses, his pending unrelated criminal charges, his conspiracy with others to commit the robbery and murders, the offenses were committed in the presence of a person under age eighteen, and there were multiple deaths. His young age was found to be a mitigating circumstance. Fuller contends that the trial court abused its discretion and that his sentence is inappropriate.

In arguing that the trial court abused its discretion, Fuller claims that none of the aggravators were proper. "So long as the sentence is within the statutory range, it is subject to review only for abuse of discretion." Anglemyer v. State, 868 N.E.2d 482, 490 (Ind. 2007), clarified on other grounds, 875 N.E.2d 218 (Ind. 2007). This includes the finding of an aggravating circumstance and the omission to find a proffered mitigating circumstance. Id. at 490-91. When imposing a sentence for a felony, the trial court must enter "a sentencing statement that includes a reasonably detailed recitation of its reasons for imposing a particular sentence." Id. at 491.

The trial court's reasons must be supported by the record and must not be improper as a matter of law. Id. However, a trial court's sentencing order may no longer be challenged as reflecting an improper weighing of sentencing factors. Id. A trial court abuses its discretion if its reasons and circumstances for imposing a particular sentence are clearly against the logic and effect of the facts and circumstances before the court, or the reasonable,

probable, and actual deductions to be drawn therefrom. <u>Hollin v. State</u>, 877 N.E.2d 462, 464 (Ind. 2007).

A defendant's history of juvenile adjudications is a proper aggravating circumstance for sentencing purposes. <u>Haas v. State</u>, 849 N.E.2d 550, 555 (Ind. 2006). As to this aggravator, Fuller claims that "unrelated juvenile offenses do not justify the maximum sentence which was imposed." Appellant's Brief at 28. This argument presents an invitation to reweigh sentencing factors and accord less significance to this aggravator. We may not do so. <u>Anglemyer</u>, 868 N.E.2d at 491.

At the time of sentencing, Fuller was facing charges for burglary and armed robbery. The charges were based upon events occurring several days before the murders. Fuller directs our attention to the language of <u>Cotto v. State</u>, 829 N.E.2d 520, 526 (Ind. 2005): "A record of arrest, without more, does not establish the historical fact that a defendant committed a criminal offense and may not be properly considered as evidence of criminal history." Nonetheless, a record of arrests and charges may reveal that a defendant has not been deterred from criminal activity even after having been subject to the police authority of the State. <u>Id.</u> A sentencing court may consider the charges as evidence of the defendant's character and the risk that he will reoffend. <u>Tunstill v. State</u>, 568 N.E.2d 539, 545 (Ind. 1991).

Although he alleges that the trial court should not have considered his conspiracy with Brown and Smith to be an aggravator, Fuller makes no specific argument in this regard. With respect to the finding that the crimes were committed in the presence of an individual

22

under age eighteen, Indiana Code section 35-38-1-7.1(4) includes as a specific aggravating circumstance the commission of a crime of violence in the presence or within hearing of an individual who was less than eighteen years of age and is not the victim of the offense. The best evidence of legislative intent is the text of the statute. Adams v. State, 960 N.E.2d 793, 798 (Ind. 2012). Although Fuller suggests that we read into the statute an exception for a co-actor under age eighteen, there is no such statutory exclusion in the language chosen by the legislature.

Finally, quoting McElroy v. State, 865 N.E.2d 584, 589 (Ind. 2007), Fuller argues that the trial court should not have considered the fact that there were multiple murders because "It is true that a material element of a crime may not be used as an aggravating factor to support an enhanced sentence." In McElroy, the Court had examined a sentence imposed under the presumptive sentencing scheme. Subsequently, our supreme court has explained that, "[b]ased on the 2005 statutory changes [enacting an advisory scheme], this is no longer an inappropriate double enhancement." Pedraza v. State, 887 N.E.2d 77, 80 (Ind. 2008). If, however, a trial court imposed a maximum sentence while explaining only that an element was the reason, the trial court would have provided an unconvincing reason that might warrant revision of the sentence on appeal. Id. (emphasis in original). Such is not the situation here. The trial court properly focused upon the commission of multiple crimes with multiple victims and also identified other valid circumstances to ultimately support the maximum sentence.

Fuller also claims that his sentence is inappropriate. The authority granted to this

Court by Article 7, § 6 of the Indiana Constitution permitting appellate review and revision of criminal sentences is implemented through Appellate Rule 7(B), which provides: "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." Under this rule, and as interpreted by case law, appellate courts may revise sentences after due consideration of the trial court's decision, if the sentence is found to be inappropriate in light of the nature of the offense and the character of the offender. Cardwell v. State, 895 N.E.2d 1219, 1222-25 (Ind. 2008); Serino v. State, 798 N.E.2d 852, 856-7 (Ind. 2003). The principal role of such review is to attempt to leaven the outliers. Cardwell, 895 N.E.2d at 1225.

Having reviewed the matter, we find no abuse of discretion in the trial court's finding of aggravators, we conclude that the trial court did not impose an inappropriate sentence under Appellate Rule 7(B), and the sentence does not warrant appellate revision. Accordingly, we decline to disturb the sentence imposed by the trial court.

### Conclusion

We find no fatal variance between the charging information and the evidence presented at trial. Fuller has demonstrated no abuse of discretion in the admission of evidence; nor has he established prosecutorial misconduct. The trial court did not abuse its discretion in sentencing Fuller and his maximum sentence is not inappropriate.

Affirmed.

NAJAM, J., and BARNES, J., concur.